Present:  All the Justices

WILLIAM E. JENEARY, ADMINISTRATOR
 OF THE ESTATE OF DONALD GORDON
 JENEARY, II, DECEASED

                                        OPINION BY
v.  Record No. 002550     JUSTICE LAWRENCE L. KOONTZ, JR.
                                     September 14, 2001

COMMONWEALTH OF VIRGINIA,
 THE UNINSURED EMPLOYER'S FUND,
 ET AL.


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Charles E. Poston, Judge


     In this appeal, we consider whether the trial court

correctly applied Code §§ 65.2-1204 and 65.2-601.1 of the

Virginia Workers' Compensation Act with respect to claims made

by the Uninsured Employer's Fund and a health care provider

against the proceeds of a compromise settlement in a wrongful

death action.

                            BACKGROUND

     The parties do not dispute the principal facts.  Donald

Gordon Jeneary, II, worked as a delivery person for a restaurant

in Virginia Beach.  On January 9, 1999, Jeneary was operating

his sister's vehicle to make deliveries.  On that same day,

Jonathan R. Steele was fleeing from the police in his vehicle,

driving on Shore Drive in Virginia Beach towards its

intersection with Independence Boulevard.[1]  Steele drove through

a red light at the intersection, and his vehicle collided with

the vehicle driven by Jeneary.  Upon the impact of the vehicles,

Jeneary was ejected from the rear driver's side window of his

vehicle, sustaining serious injuries.

Immediately following the accident, Jeneary was transported

to Virginia Beach General Hospital (VBGH).  Jeneary remained at

VBGH from January 9 to January 19, 1999, receiving surgical and

nursing care.  On January 19, 1999, Jeneary died from the

injuries sustained in the collision.  Jeneary's expenses arising

from his injuries included $66,787.14 for treatment at VBGH,

$7,432.15 for medical treatment received from other health care

providers, and $14,009.35 for funeral and burial costs.

William E. Jeneary, the administrator of Jeneary's estate

(the administrator), filed a claim against the employer on

behalf of the estate for compensation benefits with the Workers'

Compensation Commission.  The restaurant, however, did not have

workers' compensation insurance.  Consequently, the

administrator asserted a claim, pursuant to Code § 65.2-1203,

against the Uninsured Employer's Fund (the Fund) for Jeneary's

medical and funeral expenses.  The Fund contested this claim

asserting, among other things, that it was unclear whether the

---

[1] The record does not disclose the reason why Steele was
fleeing from the police.

2

employer had a sufficient number of employees to bring it under the requirements of the Act.[2]

## The Wrongful Death Action

On September 30, 1999, the administrator filed a wrongful death action against Steele. Steele did not have automobile liability insurance at the time of the accident. Jeneary's sister, however, had an automobile liability insurance policy with State Farm Mutual Automobile Insurance Company (State Farm) on the vehicle operated by Jeneary. The policy included $250,000 of uninsured/underinsured motorist coverage. Jeneary was an insured person entitled to recover under that provision of the policy.

On September 22, 1999, Steele, apparently already aware that the wrongful death action would be filed, had petitioned the trial court, pursuant to Code § 8.01-424, to approve a compromise settlement of the claim against him in the amount of $250,000 to be paid on his behalf under State Farm's policy described above. In his petition, Steele requested that the trial court allocate $88,228.64 to medical bills and funeral costs, $98,483.01 to Jeneary's three statutory heirs, and

---

[2] According to the parties, on March 14, 2001, after this appeal was awarded, the Workers' Compensation Commission ordered the Fund to pay the workers' compensation claim. See Code § 65.2-1203. However, none of the parties asserts that the Commission's ruling affects the issues raised in this appeal.

3

$63,288.35 to the administrator's attorneys for fees and expenses. The petition expressly provided that the settlement "in no way releases Jonathan Steele from any subrogation collection proceedings that State Farm Mutual Automobile Insurance Company may choose to institute against Jonathan Steele."

On October 1, 1999, the day after the wrongful death action was filed, the trial court entered an order consolidating that action and Steele's petition to approve the settlement into a single settlement proceeding. In a separate order, the trial court granted Steele's petition to approve the settlement and directed that the proceeds be disbursed as outlined in the petition. In that order, the trial court stated that the wrongful death action "has been settled by payment made to William E. Jeneary, Administrator of the Estate of Donald G. Jeneary, II, deceased, by State Farm Mutual Automobile Insurance Company." The trial court directed that the $88,228.64 allocated for medical and funeral expenses be placed in escrow with the administrator's attorneys.[3]

---

[3] Although the record is not clear, it appears that all the proceeds from the settlement were placed in escrow with the administrator's attorneys and that no funds were distributed to the heirs or the attorneys at the time of the trial court's order granting Steele's petition.

4

## The Fund's Lien

On November 1, 1999, the administrator filed a motion in the trial court seeking a determination of the Fund's lien, if any, against the settlement proceeds obtained in the wrongful death action for any workers' compensation benefits paid by the Fund.[4]  On December 1, 1999, the Fund filed a brief asserting that it had a lien against the settlement proceeds pursuant to Code § 65.2-1204.  The Fund, recognizing that this was an issue of first impression, asserted that under this statute, the Fund is "subrogated to any right to recover damages" which the injured employee or his estate might have against "any other party" in order to recoup payments made by the Fund when an employer has not complied with the Act.  Thus, the Fund contended that the settlement of the claim against Steele with the proceeds of State Farm's uninsured motorist coverage arose from a "right to recover damages" from an "other party."

In a responding brief filed December 6, 1999, the administrator asserted that the settlement proceeds were not paid by an "other party," but as the result of a private contract of insurance.  Thus, he contended that the Fund was not entitled to subrogate these specific settlement proceeds.

---

[4] For reasons not clear in the record, a second copy of the motion was filed on November 30, 1999.

On March 3, 2000, the trial court issued a letter opinion recognizing the Fund's right to a lien. The trial court reasoned that State Farm was an "other party" contemplated under Code § 65.2-1204 because "State Farm certainly took part in this case" by paying the settlement proceeds "for injuries caused by [Steele's] negligence." The trial court held that Code § 65.2-309.1, which expressly limits an employer's right of subrogation against proceeds recovered by an injured employee pursuant to the uninsured motorist provisions of a policy of motor vehicle insurance carried by and at the expense of the employer, did not apply to the lien asserted by the Fund under Code § 65.2-1204. By order entered on May 19, 2000, the trial court ruled that the Fund had a valid lien against the settlement proceeds pending the outcome of the underlying workers' compensation benefits claim.

### VBGH's Petition for Distribution of Funds

On January 12, 2000, VBGH filed a petition to intervene in the settlement proceeding. VBGH sought to be paid $66,787.14, the amount of the settlement funds apportioned to the hospital in the trial court's October 1, 1999 order. On April 16, 2000, the trial court granted VBGH leave to intervene and ordered that the settlement funds continued to be held in escrow pending further order of the court.

On May 25, 2000, VBGH filed a motion for distribution of all the funds apportioned to the creditors of Jeneary's estate for medical and funeral expenses. At a July 31, 2000 hearing, the administrator requested that the trial court stay VBGH's motion for distribution, asserting that Code § 65.2-601.1 prohibited all health care providers from instituting any debt collection proceedings pending resolution of the workers' compensation claim. VBGH contended that the list of prohibited debt collection activities under Code § 65.2-601.1(B) was exclusive and was limited to extra-legal methods of collecting the debt. Thus, VBGH contended that its intervention in the settlement proceeding did not amount to "debt collection activities" under Code § 65.2-601.1. The trial court agreed with VBGH's contentions and ruled that this statute was inapplicable to this case.

Immediately following the hearing, the trial court entered an order directing the payment of $88,228.64 from the settlement funds held in escrow to the creditors of Jeneary's estate, including $66,787.14 to VBGH. The order expressly incorporated the trial court's prior ruling that Code § 65.2-601.1 did not prevent VBGH's intervention in the settlement proceedings or bar its motion for distribution of the settlement proceeds. Additionally, the order incorporated the May 19, 2000 order imposing a statutory lien in favor of the Fund on the remaining

7

settlement funds.[5]  We awarded the administrator of Jeneary's

estate this appeal.

DISCUSSION

In previous decisions involving application of the Workers'

Compensation Act, we have said that "[w]hile we must construe

this remedial act broadly to afford coverage for the employee,

we are constrained by the Act itself and its intent."  Snead v.

Harbaugh, 241 Va. 524, 527, 404 S.E.2d 53, 55 (1991); see also

Baggett & Meador Cos. v. Dillon, 219 Va. 633, 637, 248 S.E.2d

819, 822 (1979).  Furthermore, "[w]e must take the statute as we

find it, gather the legislative intent from the words used and

give effect to the purposes thus ascertained."  Van Geuder v.

Commonwealth, 192 Va. 548, 554, 65 S.E.2d 565, 568 (1951).

These principles guide our analysis of the issues in this case.

---

[5] This order further provided that it constituted "a final
disposition of all issues before" the trial court and purported
to remove the cause from the docket.  It is apparent on the
record, however, that at the time this order was entered, the
administrator's claim remained pending before the Workers'
Compensation Commission.  Accordingly, there had been no final
resolution of whether, and in what amount, the Fund's lien would
reduce the settlement proceeds and, thus, require alteration of
the apportionment previously made.  However, because the trial
court was "exercis[ing] . . . its chancery power under [Code
§ 8.01-424 and] the circumstances of this case," see Parrish v.
Jessee, 250 Va. 514, 524, 464 S.E.2d 141, 147 (1995), the
matters to be resolved in this appeal are subject to
interlocutory review under Code § 8.01-670(B).

8

The administrator contends that the trial court erred in ruling that the Fund's lien under Code § 65.2-1204 is not limited by Code § 65.2-309.1.  The thrust of the administrator's contention is that when, pursuant to Code § 65.2-1203, the Fund pays compensation benefits to an injured employee, it "steps into the shoes" of the employee's employer and, thus, its subrogation rights under Code § 65.2-1204 are identical with those of the employer and are similarly limited by Code § 65.2-309.1.  We disagree.

In Horne v. Superior Life Insurance Co., 203 Va. 282, 123 S.E.2d 401 (1962), we construed former Code § 65-38, the predecessor statute to current Code § 65.2-309, as not permitting an employer to subrogate a claim for uninsured motorist coverage on a private policy of insurance maintained by the injured employee's wife.  203 Va. at 286, 123 S.E.2d at 404.  Former Code § 65-38 provided that the payment of a workers' compensation claim by an employer would "operate as an assignment to the employer of any right to recover damages which the injured employee . . . may have against any other party for such injury."  (Emphasis added).  We observed that "[i]n the absence of a statutory provision giving the employer or its compensation carrier a right of subrogation against an insurer of the employee under the uninsured motorist provision of a

9

liability policy, such a right does not exist." Horne, 203 Va. at 286, 123 S.E.2d at 404. We held that Code § 65-38 did not give that right and that the insurer of the injured employee was not "'any other party' within the contemplation of the statute." Id. Thereafter, in the subsequent revision of the Workers' Compensation Act, the legislature enacted Code § 65.2-309.1 which expressly grants the employer the right of subrogation against proceeds recovered by the injured employee under the uninsured motorist coverage of a policy of insurance provided and paid for by the employer.

By contrast, Code § 65.2-1204, which defines the Fund's right of subrogation, makes no reference to claims arising from uninsured motorist coverage. Code § 65.2-1204 provides:

> The Commission shall, upon payment of a claim from the Uninsured Employer's Fund, be subrogated to any right to recover damages which the injured employee or his personal representative or any other person may have against his employer or any other party for such injury or death.

The language of this statute neither expressly nor by implication places the Fund in the same position as an employer. Rather, when the Fund is ordered to pay compensation benefits, its right of subrogation extends to claims the employee may have against "the employer or any other party." (Emphasis added). In this context, the Fund correctly asserts that it is not "an insurance program for an uninsured employer." Accordingly, we

10

hold that the trial court did not err in ruling that Code § 65.2-309.1 is inapplicable to the Fund's subrogation rights under Code § 65.2-1204.

However, this determination does not resolve the question whether the Fund has a lien on the settlement proceeds of a wrongful death action filed against the tortfeasor where those proceeds are derived from uninsured motorist coverage in a private insurance policy maintained by the injured employee or a third-party. Rather, our analysis here turns on whether State Farm was an "other party" to the wrongful death action against Steele or the settlement proceeding as contemplated by the phrase "any other party" in Code § 65.2-1204.

The Fund asserts that the phrase "any other party," as used in Code § 65.2-1204, must be read more expansively than the identical language from former Code § 65-38 that we construed in Horne. The Fund contends that this is so because, in defining the subrogation rights of the Fund under the Act, the legislature did not include a provision similar to Code § 65.2-309.1 to limit the Fund's right of subrogation with respect to uninsured motorist coverage. In essence, the Fund's contention is that without an express limitation in Code § 65.2-1204, the legislature necessarily intended to modify our holding in Horne in the context of the Fund's subrogation rights.

11

The Fund further contends that because it does not serve as an insurance program for employers that fail to provide workers' compensation benefits but, rather, acts as a safety net to provide compensation to injured employees entitled to benefits under the Act, public policy favors an expansive reading of Code § 65.2-1204 to permit the Fund to assert a lien against any right of recovery such an employee or his estate might have for his injuries to prevent "a double recovery" by the injured employee or his estate. Thus, in the present case, the Fund asserts that the trial court correctly determined that State Farm was an "other party" as contemplated by Code § 65.2-1204 because Jeneary's estate had a claim against State Farm arising out of the same injuries for which the Fund might have to pay compensation.

The trial court reasoned that State Farm was an "other party" within the meaning of Code § 65.2-1204 because "State Farm certainly took part in this case." In reaching this conclusion, the trial court relied on a definition of the term "party" as meaning " 'a person concerned or having or taking part in any affair, matter, transaction or proceeding, considered individually.' " Although the trial court ascribes this definition to Black's Law Dictionary, the current edition of that resource does not contain that definition. Rather, in this context, the definition that would apply is "[o]ne by or

12

against whom a lawsuit is brought <a party to a lawsuit>."
Black's Law Dictionary 1144 (7th Ed. 1999).  An earlier edition
does contain the definition quoted by the trial court; however,
that definition is further modified by the notation that
" '[p]arty' is a technical word having a precise meaning in
legal parlance," which is to describe the actual parties to the
suit.  Blacks Law Dictionary 1010 (5th Ed. 1979).  The notation
makes the further distinction that "others who may be affected
by the suit, indirectly or consequently, are persons interested,
but not parties."  Id.

The language of Code § 65.2-1204 with regard to the Fund's
rights of subrogation is identical in all material respects to
the language in former Code § 65-38, currently Code § 65.2-309,
which we interpreted in Horne as excluding as "any other party"
an insurer providing uninsured motorist coverage to an injured
employee through a private insurance contract.  We are of
opinion that it is significant that the legislature, in light of
our holding in Horne, did not expressly provide the right of the
Fund to be subrogated to claims against insurance policies
providing injured employees with uninsured motorist coverage.
Clearly, if the legislature intended to do so, it would readily
have used language similar to that found in Code § 65.2-309.1 to
expressly provide this right of subrogation to the Fund as it
has for employers.  The legislature may choose to provide such a

13

right to the Fund; this Court, however, must find that right in the express language of the statute. Moreover, since our decision in Horne, we have consistently held that an insurer providing uninsured motorist coverage is not a party to the underlying tort action upon which its liability may ultimately be predicated.

In Doe v. Brown, 203 Va. 508, 125 S.E.2d 159 (1962), we held that a claim against an uninsured tortfeasor "is not an action arising ex contractu to recover against the insurance company on its [uninsured motorist] endorsement. The insurance company is not a named party defendant and judgment cannot be entered against it." Id. at 515, 125 S.E.2d at 164; accord Nationwide Mutual Insurance Co. v. Hylton, 260 Va. 56, 61, 530 S.E.2d 421, 423 (2000); Rogers v. Danko, 204 Va. 140, 143, 129 S.E.2d 828, 830 (1963). Instead, the claim "is an action ex delicto, since the cause of action arises out of a tort." Doe, 203 Va. at 515, 125 S.E.2d at 164. Thus, in this case, State Farm was not a party to the administrator's wrongful death action and, therefore, was not an "other party" as contemplated by Code § 65.2-1204.

Similarly, State Farm's payment of the settlement proceeds was not sufficient to make it a party to Steele's petition for approval of the settlement under Code § 8.01-424. Although the petition makes reference to State Farm's subrogation interests,

14

the payment of the settlement proceeds on Steele's behalf merely fulfilled a contractual obligation to Jeneary as an insured under the policy State Farm issued to Jeneary's sister. State Farm's obvious insistence that its subrogation rights be preserved in the settlement did not result in State Farm becoming a "party" to the settlement. Those rights flowed from the insurance contract.

Accordingly, we hold that the Fund was not entitled to a lien against the proceeds of the settlement paid by State Farm to Jeneary's estate because State Farm was not "any other party" as contemplated by Code § 65.2-1204, and the trial court erred in imposing such a lien.

### VBGH's Claim

Next, we consider whether the trial court erred by refusing to stay VBGH's motion for distribution of the settlement proceeds to the creditors of Jeneary's estate pending resolution of the underlying workers' compensation claim. Code § 65.2-601.1 provides that:

> A. Whenever an employee makes a claim pursuant to § 65.2-601, all health care providers, as defined in § 8.01-581.1, shall refrain from all debt collection activities relating to medical treatment received by the employee in connection with such claim until after an award is made on the employee's claim pursuant to § 65.2-704. The statute of limitations for the collection of such debt shall be tolled during the period in which the applicable health care provider is required to refrain from debt collection activities hereunder.

15

B. For the purpose of this section, "debt collection activities" means repeatedly calling or writing to the employee and threatening either to turn the matter over to a debt collection agency or to an attorney for collection, enforcement or filing of other process. The term shall not include routine billing or inquiries about the status of the claim.

VBGH, as it did in the trial court, again asserts that intervening in a settlement proceeding does not constitute "debt collection activities" as defined by Code § 65.2-601.1(B). The administrator responds that Code § 65.2-601.1(A) prohibits "all debt collection activities," including the filing of any legal process to collect the debt.

"A statute is not to be construed by singling out a particular phrase; every part is presumed to have some effect and is not to be disregarded unless absolutely necessary." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998); accord Melanson v. Commonwealth, 261 Va. 178, 183, 539 S.E.2d 433, 435 (2001). The definition of "debt collection activities" in Code § 65.2-601.1(B), standing alone, may appear to limit the prohibited activity to the use of "strong-arm" or threatening extra-legal methods to collect the debt. If this were so, however, the tolling provision of subsection A would confer an unnecessary benefit on a health care provider by extending the statute of limitations for filing an action to collect the debt without a corresponding benefit to the employee to stay the collection of the debt until the underlying workers'

16

compensation claim is resolved.  Moreover, if VBGH's interpretation of "debt collection activities" were correct, then a health care provider could proceed to file an action to collect the debt even though it could not otherwise contact the employee to make efforts to collect the debt or advise the employee that it was turning the matter over "to an attorney for collection, enforcement or filing of other legal process."

We may reject a literal construction of a statute that "would involve a manifest absurdity."  Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934); accord Davis v. Tazewell Place Associates, 254 Va. 257, 260, 492 S.E.2d 162, 164 (1997). Clearly, if Code § 65.2-601.1 were to be interpreted as VBGH suggests, the result would be manifestly absurd.

We hold that Code § 65.2-601.1 prohibits all debt collection activities, other than "routine billing [and] inquiries about the status of the claim," instituted by a health care provider prior to the resolution of an employee's workers' compensation claim, including the filing of any legal process to collect the debt.  Accordingly, the trial court erred in failing to grant the administrator's motion to stay VBGH's efforts to force distribution of the settlement proceeds to the estate's creditors and in ordering that distribution.[6]

---

[6] The record does not reflect that VBGH obtained authority from the other creditors to act on their behalf and none of the

17

CONCLUSION

For these reasons, we will reverse the judgment of the trial court permitting the Fund to assert a lien against the settlement proceeds, vacate the order directing the distribution of the settlement proceeds to the estate's creditors, and remand the case for further proceedings consistent with the views expressed in this opinion including the imposition of a stay on VBGH's debt collection activities.

<u>Reversed and remanded</u>.

---

other creditors sought to intervene or appear in the settlement proceeding or in this appeal.  Accordingly, we express no opinion on whether the creditors who provided funeral and burial services were "health care providers" and, thus, would also be barred from seeking a distribution of the settlement proceeds to satisfy their claims against the estate.