Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Carrico, S.J.

BOARD OF DIRECTORS OF THE COLCHESTER
TOWNE CONDOMINIUM COUNCIL OF CO-OWNERS

                                    OPINION BY
v. Record No. 021741        JUSTICE LAWRENCE L. KOONTZ, JR.
                                    June 6, 2003
WACHOVIA BANK, N.A., ET AL.

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  Henry E. Hudson, Judge

     In this appeal, we consider whether the trial court correctly determined that Code § 55-79.84, part of the Condominium Act, Code §§ 55-79.39 through -79.103, requires that the proceeds from a non-judicial sale of a condominium unit by a unit owners' association to satisfy a lien for unpaid condominium fees must first be applied to satisfy a prior first deed of trust on the unit sold.

                          BACKGROUND

     In March 2002, the Board of Directors of the Colchester Towne Condominium Council of Co-Owners (the Association) recorded a lien, pursuant to Code § 55-79.84, against a condominium unit owned by Juanita C. James for unpaid condominium assessments. The Association initiated the process for a public sale of the unit, as permitted by Code § 55-79.84(I), and notified Wachovia Bank, N.A. (the Bank), the holder of the first deed of trust on the unit. The first deed of trust had been recorded in 1996. The Association's

advertisement of the intended sale of the unit at public auction to the highest bidder reflected that title to the unit would be conveyed to the purchaser by special warranty deed. The notice included a statement that the unit was "subject to a deed of trust" in favor of the Bank and that the sale would be "subject to all existing liens." The Association intended to disburse the sale proceeds pursuant to the provisions of Code § 55-79.84(I)(5)(c). This subsection makes no express provision for disbursement of any of the proceeds of the sale to satisfy a first deed of trust.

The Bank filed a bill of complaint and a motion for temporary injunction against the impending public sale in the trial court, seeking a declaratory judgment that the proceeds of the sale must first be applied to satisfy the lien of the Bank's first deed of trust. The Association responded that, under Code § 55-79.84(I), it was entitled to sell the unit "subject to" the Bank's lien without satisfying that lien, and that the proceeds of the sale were to be applied to the Association's lien and other specified encumbrances on the property. The trial court entered an injunction in favor of the Bank, concluding that under the provisions of Code § 55-79.84 the Bank's lien had priority over the Association's assessment lien and that the Association was required to apply

2

any proceeds from the sale first to satisfy the bank's lien. We granted the Association an appeal.

## DISCUSSION

It is a matter of common knowledge and experience that, as with other forms of land development, purchase money financing by institutional lenders is the primary fuel that drives the development engine of a condominium complex. In turn, the realities of the marketplace require that such lenders be encouraged to provide the desired financing for individual condominium units by granting priority to the lien of their first mortgages or first deeds of trust. It is the priority of the lender's lien on a particular unit as well as the market value of the unit that establishes the lender's security for the loan.[*] Similarly, there is no dispute that condominium assessments are the recognized and necessary means by which all owners of a particular condominium development benefit from the use of such assessments for general maintenance, security, and other matters.

With this in mind, the General Assembly by its enactment of Code § 55-79.84 has preserved the desired priority of the

---

[*] We recognize that the Bank's deed of trust in this particular case arises from an "equity line agreement" rather than from purchase money financing. This deed of trust, however, clearly qualified for priority over the assessment lien as established in Code § 55-79.84(A).

3

lien of the instrument securing institutional lenders while providing for an inferior lien in favor of the unit owners' association for unpaid assessments on a particular condominium unit. Code § 55-79.84 addresses the circumstances under which a condominium association may acquire a lien on a condominium for unpaid assessments. It also addresses the methods of enforcing such a lien. When perfected in accordance with the statute, an assessment lien is prior to all other liens and encumbrances except real estate tax liens on the unit, liens and encumbrances recorded prior to the condominium lien, and "sums unpaid on any first mortgages or first deeds of trust recorded prior to the perfection of said lien for assessments and securing institutional lenders." Code § 55-79.84(A).

Once an assessment lien is perfected against a condominium unit, Code § 55-79.84(I) authorizes "the unit owners' association [to] sell the unit at public sale, subject to prior liens." (Emphasis added.) Code § 55-79.84 (I)(5)(c) recites the order in which the proceeds of the sale are to be applied:

> The unit owners' association shall receive and receipt for the proceeds of sale, . . . and apply the same in the following order: first, to the reasonable expenses of the sale; second, to the satisfaction of all taxes, levies, and assessments, with costs and interest; third, to the satisfaction of the lien for the unit owners' assessments; fourth, to the satisfaction in the order of priority of any remaining inferior claims of record; and

4

fifth, to pay the residue of the proceeds to the unit owner or his assigns . . . .

The focus of the present dispute is on the proper construction of the phrase "subject to prior liens" in Code § 55-79.84(I). The Bank contends that because the priority of its lien is established in Code § 55-79.84(A), the proceeds of the sale must be used to satisfy its lien before being applied to the lien of the unit owners' association and the other encumbrances on the unit in the order prescribed by Code § 55-79.84(I)(5)(c) because the sale is "subject to prior liens."

The Association contends that the phrase "subject to prior liens" as used in Code § 55-79.84(I) should be read to permit a unit owners' association to sell a unit at public sale with the understanding that the unit remains encumbered by any prior superior liens. Thus, the Association contends that from the proceeds of the sale it may satisfy its assessment lien, satisfy the other encumbrances on the unit specifically enumerated in Code § 55-79.84(I)(5)(c), and pay any residue of the sale proceeds to the former owner of the unit, without applying the proceeds to the prior liens. In sum, the Association contends that a forced sale of an individual unit pursuant to Code § 55-79.84(I) preserves the priority of the lien of the first deed of trust in favor of the institutional lender established in subsection (A), by

5

permitting the sale to be made "subject to prior liens"
through the continued encumbrances of the property after the
sale.

The Association's interpretation of the phrase "subject
to prior liens" in Code § 55-79.84(I) creates a conflict
between that subsection and subsection (A) of the statute.  In
effect, the Association's interpretation would render the
priority of liens established in subsection (A) meaningless
with respect to the remainder of the statute.  This conflict
is avoided, however, by the application of basic principles of
statutory construction.

Under basic rules of statutory construction, we examine
the language of a statute in its entirety and determine the
intent of the General Assembly from the words contained in the
statute.  Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494,
496 (2001); Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d
153, 155 (1999).  In doing so, the various parts of the
statute should be harmonized so that, if practicable, each is
given a sensible and intelligent effect.  VEPCO v. Prince
William Co., 226 Va. 382, 387-88, 309 S.E.2d 308, 311 (1983).

Applying these principles of statutory construction, the
priority of the liens in favor of institutional lenders in
Code § 55-79.84(A) is properly viewed as creating a condition
precedent to the disbursement order of the sale proceeds under

6

subsection (I).  Thus, the "subject to prior liens" language of the latter subsection may be fairly interpreted as requiring the satisfaction of those liens from the proceeds of a forced sale of an individual condominium unit by the unit owners' association.  In short, we conclude that the General Assembly intended to balance the interests of the holder of a first deed of trust and those of a unit owners' association by providing in these subsections that the satisfaction of the institutional lender's first mortgage or first deed of trust be a term of the public sale of an individual condominium unit by the unit owners' association when seeking to satisfy its inferior lien for unpaid assessments.

A contrary result permitting the sale proceeds to be used to satisfy the lien of the unit owners' association, other lesser encumbrances, and potentially disbursing the residue of the sale proceeds to the defaulting former owner, without applying those proceeds to satisfy the first deed of trust, would put the institutional lender holding the first deed of trust at a serious disadvantage with respect to its ability to protect its security interest in the condominium unit.  The purchaser and new owner of the condominium unit would have no obligation to pay the lender the sums unpaid on the lender's first deed of trust.  The lender would be placed at risk that the new owner might permit damage to the unit before the

7

lender could foreclose. The other detrimental possibilities are numerous and of great potential consequence, such as the prospect of inadequate fire insurance coverage in the event of unexpected fire damage to the unit. Additionally, the original owner would no longer own the unit and, thus, would have less incentive to satisfy the debt secured by the lender's deed of trust. We have no doubt that the General Assembly intended to avoid such possibilities to the detriment of the institutional lender's security interest.

Accordingly, we hold that the proceeds of a public sale of a condominium unit by a unit owners' association under Code § 55-79.84(I) must be applied first to satisfy the prior superior liens established under Code § 55-79.84(A) before the unit owners' association may apply the proceeds of that sale in satisfaction of its own lien as well as other encumbrances on the property, and then it is to pay any residue to the former unit owner as prescribed by Code § 55-79.84(I)(5)(c).

CONCLUSION

For these reasons, we will affirm the judgment of the trial court directing that the proceeds of the sale of the condominium unit by the Association pursuant to Code § 55-79.84(I) must be used first to satisfy the Bank's first deed of trust.

Affirmed.

8

JUSTICE LACY, with whom JUSTICE KINSER and JUSTICE LEMONS join, dissenting.

Subsection (I)(5)(c) of Code § 55-79.84 specifically addresses the manner in which the proceeds of the non-judicial or public sale of a condominium unit are to be disbursed:

> The unit owners' association shall receive and receipt for the proceeds of sale, . . . and apply the same in the following order:  first, to the reasonable expenses of sale; second, to the satisfaction of all taxes, levies, and assessments, with costs and interest; third, to the satisfaction of the lien for the unit owners' assessments; fourth, to the satisfaction in the order of priority of any remaining inferior claims of record; and fifth, to pay the residue of the proceeds to the unit owner or his assigns; . . .

There is nothing ambiguous about this provision.  It clearly directs payment of an association's assessment lien following satisfaction of the expenses of the sale and satisfaction of taxes, levies, and assessments.  Nothing in this language suggests that the proceeds from the public sale must be used first to satisfy a first deed of trust.  Normal rules of statutory construction require application of unambiguous provisions in accordance with the plain language of the statute.  Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002).

The majority concludes, however, that this section cannot be applied as written because it creates a conflict with the priority of liens set out in subsection (A) of the section and

9

because "common knowledge and experience" inform us that without such priority institutional lenders will no longer provide the "fuel" for condominium development. The majority states that "[i]t is the priority of the lender's lien on a particular unit as well as the market value of the unit that establishes the lender's security for the loan." In my opinion, applying these Code subsections as written creates neither a conflict between them, nor the parade of horribles predicted by the majority.

What is the conflict the majority sees? Subsection (A) provides that sums unpaid on first mortgages, or first deeds of trust, securing institutional lenders and recorded prior to the perfection of association assessment liens have priority over the association assessment liens. Subsection (I) provides that the condominium owners' association may sell the unit at public sale, "subject to prior liens," if the association complies with certain procedures. Payment of sums remaining on a first mortgage or first deed of trust is not mentioned in the scheme delineated in subsection (I) of the statute. This omission, the majority says, creates the conflict because it renders meaningless the priority of liens set out in subsection (A). I disagree.

Normal usage of the phrase "subject to prior liens" as used in subsection (I) means that the property being sold

remains as security for such prior liens – that is, the property remains liable for such prior liens regardless of the transfer of title. This concept is not foreign to creditors' rights jurisprudence. It is grounded in common law redemption of equity procedures available to subordinate lenders. See Yaffe v. Heritage Sav. & Loan Ass'n., 235 Va. 577, 582, 369 S.E.2d 404, 407 (1988); Kaplan v. Ruffin, 213 Va. 551, 554-55, 193 S.E.2d 689, 692 (1973); Schmidt & Wilson, Inc. v. Carneal, 164 Va. 412, 416-17, 180 S.E. 325, 326-27 (1935). The majority's interpretation of "subject to prior liens" is inconsistent with that phrase's well-understood and long-accepted meaning.

The majority's interpretation also requires adding words to the statute so that the provision would read as follows: "The unit owners' association may sell the unit at public sale, subject to satisfaction of prior liens." We generally do not engage in adding words to a statute, particularly when the statute has a clear and unambiguous meaning without the addition of such words. See Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266-67 (2003).

More importantly, in enacting subsection (I), the General Assembly did not render subsection (A) meaningless. The General Assembly exercised its legislative prerogative to provide condominium associations with a process to enforce

11

their assessment liens in addition to traditional foreclosure procedures and the other remedies set out in subsections (C), (D), and (G) of Code § 55-79.84. The priorities set out in (A) apply in all situations involving the sale of the condominium unit except the specific type of sale authorized in subsection (I).

The General Assembly's understanding of the enforcement mechanism it adopted is further shown by the legislation adding subsection (I) in 1997. In that legislation, the General Assembly also amended Code § 55-516 to provide the identical enforcement mechanism for property owners' association assessment liens. See 1997 Va. Acts ch. 760. The provisions of subsection (A) in Code § 55-79.84 and subsection (A) of Code § 55-516 regarding the priority of liens are also identical. In contrast, the General Assembly, in prescribing disbursement of proceeds of public sale to enforce the assessment lien of a cooperative association, specifically provided that "[s]atisfaction in the order of priority of any prior claims of record" occur prior to satisfaction of the cooperative association's assessment lien. Code §§ 55-472 (J)(3), -472(J)(4). Subsection (B) of Code § 55-472, like subsection (A) of Code § 55-79.84, also provides that a first security interest previously perfected encumbering the

12

cooperative interest of a proprietary lessee has priority over the cooperative association's assessment lien.

Because the General Assembly has clearly provided for different payment distributions in the enforcement of assessment liens, even though the prior perfected security interest in each case generally has priority over assessment liens, I can only conclude that the language adopted by the General Assembly was meant to be applied as written. When the General Assembly intended that prior perfected liens be satisfied before payment of an association's assessment lien, it made the appropriate provisions in the legislation. The language adopted in Code § 55-79.84(I) did not do so and such a payment scheme should not be imposed by judicial interpretation.

The touchstone of the majority's statutory conflict is its perception that allowing the sale of a condominium unit "subject to" an antecedent deed of trust and paying the condominium assessment lien will somehow seal the doom of condominium development. We do not have the record in this case to support such a conclusion, nor is this Court the proper venue to develop such a record. Rather, the General Assembly is the branch of government designed and equipped to take testimony and compile information on the impact of such

13

payment priorities, and accordingly, to decide the wisdom of adopting them.

Of course, if we were to consider relevant data and our common knowledge and experience regarding condominium development, we might conclude that part of the value of a condominium unit comes from the ability of the condominium association to maintain the common areas of the development, including the structures' exteriors, landscaping, and amenities.  The ability to maintain these elements is directly related to the association's ability to secure payment of assessments from the individual unit owners.  The legislative provision for payment of such association liens from the public sale of a unit, subject to the first deed of trust (and other prior liens), is precisely the type of enforcement mechanism that enhances a lender's confidence in the value of it's security interest.

Contrary to the majority's observations, the sale of a condominium unit pursuant to subsection (I) would not alter the value of the property.  There is no change in the original owner's liability for the first deed of trust note.  In fact, following a public sale, satisfaction of the lender's deed of trust is enhanced because a second party has an interest in seeing that the deed of trust note is not defaulted.

14

Furthermore, the lender in this case, as in most deeds of trust, anticipated the sale of the property without its consent or satisfaction of its lien. The lending instrument states that, in the event of sale or conveyance of the property, the debt secured by the property is subject to payment in full. Concerns about unit damage or destruction by the owner before foreclosure, in my opinion, are counter intuitive and not consistent with human experience.

Allowing the sale of a condominium unit subject to the lender's lien simply does not compromise or jeopardize the lender's security interest. But, as I have said, these concerns are the stuff of legislative policy determinations and not the type of legal principle or rule of statutory construction that should guide our analysis and conclusions.

Accordingly, I would reverse the judgment of the trial court and remand the case for further proceedings.[*]

---

[*] The lender in this case also argued that, because its lien was recorded in 1996 and subsection (I) of Code § 55-79.84 was not enacted until 1997, the subsection cannot be applied retroactively to affect its substantive rights. Regardless of whether the 1997 enactment affected substantive rights, the lender is precluded from raising this issue here because it was not raised in the trial court. Rule 5:25. In the trial court, the lender argued that allowing the proceeds from a public sale to be disbursed as provided in subsection (I) was *per se* unconstitutional because such a construction would violate the Contract Clause of the United States Constitution. U.S. Const. art. I, § 10.

15