Present: All the Justices

DEPARTMENT OF MEDICAL
ASSISTANCE SERVICES

OPINION BY
v. Record No. 032313      JUSTICE LAWRENCE L. KOONTZ, JR.
                                  September 17, 2004
BEVERLY HEALTHCARE OF
FREDERICKSBURG, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether Code § 2.2-4030, which provides in subsection (A) that an award of attorneys' fees "shall not exceed $25,000" in a civil case successfully contesting the action of an agency of the Commonwealth, permits parties whose claims are combined in a single action by operation of Rule 2A:3(b) to recover individual awards of attorneys' fees up to the statutory maximum. We also consider whether certain claims in the present case were barred by a regulatory limitations period for challenging an agency action under the Administrative Process Act (APA). Code § 2.2-4000 et seq.

BACKGROUND

This appeal arises from a judgment of the Court of Appeals of Virginia affirming a judgment of the Circuit Court of Spotsylvania County (the trial court) that the Virginia Department of Medical Assistance Services (DMAS) had improperly

determined that eight nursing home facilities[1] in Virginia were not entitled to increased Medicaid reimbursement for their expenses under a higher cost ceiling applicable under 12 VAC § 30-90-20(C) to such facilities in Northern Virginia for several years at issue.  Department of Medical Assistance Services v. Beverly Healthcare, 41 Va. App. 468, 484-85, 585 S.E.2d 858, 867 (2003).  The Court of Appeals also affirmed the trial court's judgment that a determination by DMAS that five of the claims for increased reimbursement by four of the providers were time barred under the regulatory limitations period applicable to those claims.  Id. at 490, 585 S.E.2d at 869.  Additionally, the Court of Appeals affirmed the trial court's judgment that, pursuant to Code § 2.2-4030, the providers were entitled to recover reasonable costs and attorneys' fees and that the $25,000 cap on attorneys' fees provided by that statute did not apply to any claim for costs.  Id. at 491-95, 585 S.E.2d at 870-72.  However, the Court of Appeals rejected the

---

[1] The nursing home facilities were Beverly Healthcare of Fredericksburg, located in Spotsylvania County; Carriage Hill Nursing Home, located in Spotsylvania County; Heritage Hall-Front Royal, located in Warren County; Heritage Hall-King George, located in King George County; Lynn Care Center, located in Warren County; Oak Springs of Warrenton, located in Fauquier County; Rose Hill Nursing Home, located in Clarke County; and Warrenton Overlook Health and Rehabilitation, located in Fauquier County.  Each of these facilities was participating in Virginia's Medicaid program.  For convenience, we will hereafter refer to these parties collectively as "the providers."

2

determination of the trial court that the $25,000 cap should be applied on a per case basis, rather than a per party basis.  Id. at 495, 585 S.E.2d at 872.

In appealing from the judgment of the Court of Appeals to this Court, DMAS has not assigned error to the determination that the providers are entitled to the increased reimbursement or that they are entitled to recover reasonable costs and attorneys' fees.  Rather, DMAS has limited its appeal to the question whether the Court of Appeals correctly determined that Code § 2.2-4030 sets the cap for an award of attorneys' fees at $25,000 per party, rather than $25,000 for all parties who contested the agency's action in the case.  By assignment of cross-error, four of the providers challenge the determination that five of their claims were time barred by the regulatory limitations period.  Because the Court of Appeals has fully summarized the factual and procedural history of the case, id. at 473-81, 585 S.E.2d at 861-65, we will confine our discussion of the facts here to those directly relevant to the resolution of the two issues before us.

DMAS is the agency of the Commonwealth responsible for administering Virginia's Medicaid program and has the specific task of determining reimbursement rates for providers of nursing home services to Medicaid recipients.  Under the Virginia Medicaid program, each participating provider receives periodic

3

payments during a fiscal year and then submits a corresponding annual cost report to DMAS detailing the actual costs incurred by the facility for the care and services provided to its Medicaid patients. DMAS then reviews the provider's cost report and issues a "Notice of Program Reimbursement" (NPR) stating which expenses are to be reimbursed and calculating the amount of any overpayment or underpayment during the year. If the provider disagrees with DMAS's annual reimbursement determination, it may appeal the determination under provisions of the APA and "the state plan for medical assistance." Code § 32.1-325.1(B).

The rate of reimbursement for a provider is determined, in part, by its location in a particular geographic region or "peer group" within the Commonwealth. Pursuant to 12 VAC § 30-90-20(C), the Commonwealth is divided by DMAS into three such peer groups: the Virginia portion of the Washington DC-MD-VA Metropolitan Statistical Area (Northern Virginia MSA) peer group, the Richmond-Petersburg MSA peer group, and the "rest of the state" peer group. In general terms, the rate of reimbursement for each peer group is based upon differing costs of operation in each region of the Commonwealth. The eight providers in this case were originally located in the "rest of the state" peer group, which has a lower rate of reimbursement than the Northern Virginia MSA peer group.

4

On June 30, 1993, the federal Office of Management and Budget, which for statistical purposes designates certain political jurisdictions that make up a particular metropolitan area, updated the definition of the Northern Virginia MSA to include the jurisdictions in which each of the eight providers are located. The expanded definition of the Northern Virginia MSA was subsequently adopted effective October 1, 1993 by the Healthcare Financing Administration (HCFA), which administers the federal Medicare program and determines reimbursement for Medicare service providers in much the same way as DMAS calculates Medicaid reimbursement. However, due to a congressionally mandated freeze on additional federal spending, it was further determined that the expansion of the Northern Virginia MSA would not result in increased reimbursement for Medicare providers within the newly added jurisdictions until October 1, 1997. Relying on this determination, DMAS concluded that Medicaid reimbursements also would not be affected by the change in the Northern Virginia MSA until that date.

On September 26, 1996, the providers wrote to the Director of DMAS requesting that he issue a "case decision" implementing the June 30, 1993 expansion of the Northern Virginia MSA peer group effective for all reimbursements for the cost of Medicaid reimbursable services incurred by them on or after October 1, 1993. By letter dated October 4, 1996, the Director declined to

rule on the request and advised the providers that decisions regarding reimbursement were appealable under the provisions of the APA. In response, the providers advised DMAS that, while they disputed the assertion that changes in peer group classifications were appealable under the APA, they would appeal the reimbursement amounts determined under NPRs for services provided by them on and after October 1, 1993.

Following an informal fact-finding conference, DMAS determined that the providers were not due additional reimbursement and issued a letter ruling to that effect on May 1, 1998. The providers appealed this decision and a formal hearing was held October 26, 1999. The hearing officer issued a recommendation in favor of the providers on November 10, 2000. However, the Director of DMAS rejected that recommendation in a final case decision rendered on April 27, 2001. In rejecting the hearing officer's recommendation, the Director determined that the delay in implementing the expanded definition of the Northern Virginia MSA by HCFA for Medicare reimbursement justified DMAS's determination that Medicaid reimbursement would also not be affected by the change until October 1, 1997. The Director further determined that even if the peer group change should have been made in 1993 so as to include the providers in the Northern Virginia MSA, five of the NPRs had not been appealed in a timely fashion because they were not appealed

6

within 90 business days of the NPRs being issued as required by former 12 VAC § 30-90-131(3).[2]

The providers noted separate appeals of the Director's action to the trial court. However, pursuant to Rule 2A:3(b), the appeals were consolidated in "the [trial] court having jurisdiction that is named in the [first] notice of appeal . . . filed." As noted above, the trial court reversed the determination by DMAS that the providers were not entitled to increased reimbursement based upon the 1993 expansion of the Northern Virginia MSA, but upheld the determination that five of the claims were time barred. Finding that the providers had "substantially prevailed" in their appeals, the trial court ruled that they were entitled to recover costs and attorneys' fees from DMAS. However, the court further ruled that "the instant case constitutes a single civil case for purposes of the $25,000 limit on the award of [attorney's] fees pursuant to . . . Code § 2.2-4030" and, thus, awarded each provider only $3,125 for attorneys' fees.

On appeal to the Court of Appeals, DMAS challenged the trial court's determination that the providers were entitled to increased reimbursement, with the providers assigning cross-

---

[2] 12 VAC § 30-90-131 has subsequently been repealed. The provisions governing appeals by nursing home facilities of DMAS's adjustments to NPR's are currently set forth in 12 VAC § 30-20-540.

error to the determinations that five of the claims were time barred and that Code § 2.2-4030 capped attorneys' fees at a total of $25,000 for all parties. As noted above, the Court of Appeals' holdings that the parties were each entitled to recover up to $25,000 in attorneys' fees and that five of the claims were time barred are the issues to be addressed in this appeal.

DISCUSSION

We first consider DMAS's assertion that the Court of Appeals erred in holding that Code § 2.2-4030 permits each prevailing party to recover up to $25,000 in attorneys' fees, rather than providing for a cap of $25,000 on attorneys' fees for all prevailing parties in a given case contesting the action of an agency of the Commonwealth. Code § 2.2-4030(A), in relevant part, provides that:

> In any civil case . . . in which any person contests any agency action, such person shall be entitled to recover from that agency . . . reasonable costs and attorneys' fees if such person substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust. The award of attorneys' fees shall not exceed $25,000.

DMAS contends that because there was only one case before the trial court, with one central issue common to each provider, and only one agency case decision from which the providers appealed, the trial court correctly decided that "the instant case constitutes a single civil case" under Code § 2.2-4030 and

8

properly limited the providers' overall award of attorneys' fees to a maximum of $25,000. Focusing on the first phrase of the statute, "[i]n any civil case," DMAS contends that the Court of Appeals' interpretation of Code § 2.2-4030 ignores the plain language of the statute. We disagree.

It is well established that a statute should be read and considered as a whole, and the language of a statute should be examined in its entirety to determine the intent of the General Assembly from the words contained in the statute. Colchester Towne Condominium Council of Co-Owners v. Wachovia Bank, N.A., 266 Va. 46, 51, 581 S.E.2d 201, 203 (2003). In doing so, the various parts of the statute should be harmonized so that, if practicable, each is given a sensible and intelligent effect. Id. Thus, "[a] statute is not to be construed by singling out a particular phrase; every part is presumed to have some effect and is not to be disregarded unless absolutely necessary." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998); accord Jeneary v. Commonwealth, 262 Va. 418, 430, 551 S.E.2d 321, 327 (2001). By focusing only on the opening phrase of Code § 2.2-4030, it is DMAS, and not the Court of Appeals, that has disregarded the plain language of the statute.

The plain language of Code § 2.2-4030 provides that "[i]n any civil case . . . in which any person contests any agency action, such person shall be entitled to recover from that

9

agency . . . reasonable costs and attorneys' fees if <u>such person</u> substantially prevails." (Emphasis added). The clear import of this language is that each person, including a corporate person, who challenges an agency action in an appeal to the circuit court under the APA and substantially prevails in that action is entitled to recover attorneys' fees under the statute. The statute limits the recovery to "reasonable . . . attorneys' fees" of not more than $25,000 and further permits the court to deny relief where "special circumstances would make an award unjust." These limitations clearly apply to the award of attorneys' fees to "any person," and are not in any way related to or limited by the preliminary reference to "any civil case."[3] Accordingly, we hold that the Court of Appeals did not err in reversing the judgment of the trial court limiting the total recovery of attorneys' fees to $25,000 for all of the providers.

We turn now to the assignment of cross-error by four of the providers whose claims for increased reimbursement at the rate

---

[3] DMAS contends that the Court of Appeals' interpretation of the statute will lead to absurd results and excessive awards in cases where there are many parties represented by the same counsel. However, broad discretion afforded to the trial court by the statute to determine the award based upon what is reasonable and just alleviates any concern that parties would be awarded excessive fees or receive multiple recoveries for the same fees. Indeed, in this case, the record shows that counsel for the eight providers submitted a joint claim for attorneys' fees well below the $200,000 maximum liability of the combined potential limit to their claims.

applicable to the Northern Virginia MSA peer group for 1994 and 1995 were held to be time barred pursuant to former 12 VAC § 30-90-131.[4]  In pertinent part, that regulation gave these providers the right to appeal "within 90 business days following the date of a DMAS notice of program reimbursement that adjustments have been made to a specific cost report."  DMAS had concluded that such a notice of program reimbursement "triggers the payment dispute" and, accordingly in the present case, these providers had 90 business days to file their appeals from the date on which DMAS issued an NPR to them for each of the five claims in question.  It is undisputed that this was not done.

The providers assert, however, that the time limitation of former 12 VAC § 30-90-131 has no application to their administrative appeal because they were contesting the failure of DMAS to include them in the Northern Virginia MSA peer group for purposes of calculating the rate of reimbursement to them rather than contesting the amount of reimbursement under each NPR.  In making this assertion, they note that former 12 VAC § 30-90-130(B)(2) provided that the "organization of participating [nursing home facilities] into peer groups according to location as a proxy for cost variation across

_____

[4] These four providers are Beverly Healthcare of Fredericksburg, Oak Springs of Warrenton, Rose Hill Nursing Home, and Warrenton Overlook Health and Rehabilitation.

11

[state] facilities with similar operating characteristics" was a "[n]onappealable" issue. In essence, these providers assert that their request for the Director of DMAS to issue a "case decision" implementing the expansion of the Northern Virginia MSA peer group as of October 1, 1993, and the Director's subsequent refusal to do so, invoked their right of appeal without the time limitations applicable to a dispute involving an NPR. We disagree.

Initially, we note that these providers can point to no provision of the APA or the regulations promulgated by DMAS regarding the Virginia Medicaid Program that would permit them to request, or require the Director of DMAS to make, a "case decision" concerning the organization of nursing home facilities into peer groups. DMAS clearly has the authority to organize nursing home facilities into peer groups in carrying out its responsibility to administer the Virginia Medicaid program. It is in this context that the provisions of former 12 VAC § 30-90-130(B)(2) provided that the organization of nursing home facilities into peer groups was not appealable. It then becomes self-evident that the proper method for asserting that DMAS has improperly applied the regulations regarding the assignment of a particular nursing home to a particular peer group is to challenge the calculation of an NPR, which the nursing home asserts establishes an improper rate of reimbursement.

More to the point, these providers' contention that their claims do not arise from the adjustments of their reimbursement in their annual NPRs because the failure to include them in the Northern Virginia MSA peer group was not express in those NPRs is simply not a credible interpretation of the basis for their claims. The essence of these providers' claims is that their reimbursement for Medicaid services provided beginning October 1, 1993 should have been higher because of the expanded definition of the Northern Virginia MSA, whereas the NPRs they received for services rendered beginning October 1, 1993 were based upon the "rest of the state" peer group reimbursement rate. It was not necessary for DMAS to expressly exclude these providers from the Northern Virginia MSA peer group, because DMAS had already, though erroneously, determined that there would be no adjustment of the peer groups until October 1, 1997. These providers' receipt of the NPRs in which DMAS failed to make the disputed peer-group adjustment to their cost reports triggered their right to appeal and the running of the limitations period set forth in former 12 VAC § 30-90-131. Accordingly, we hold that the Court of Appeals did not err in affirming the judgment of the trial court denying these providers relief for the five untimely claims.

CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals and remand the case to that Court with directions to remand the case to the trial court for a determination of the reasonable attorneys' fees to be awarded each of the individual providers up to a maximum of $25,000.

Affirmed and remanded.