HUMPHREYS, Judge,
concurring in result.
I concur in the plurality’s decision to affirm the judgment of the trial court in this case, but I write separately because I believe the case can and should be decided on narrower grounds. Because I believe that both the plurality and dissen *134 ters are vying to issue what, on this record, can be nothing but an advisory opinion, I do not join in the analysis of either Judge McClanahan or Judge Elder and would leave for another day the issue of whether food stamps are equivalent to “public assistance moneys.” Cf. Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (declining the appellant’s invitation “to render an advisory opinion on a moot question based upon speculative facts,” reasoning that “courts are not constituted ... to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative,” and concluding that the court would instead “await the arrival of a case in which” the issue was properly presented).
Under Code § 63.2-1908,
[a]ny payment of public assistance money made to or for the benefit of any dependent child or children ... creates a debt due and owing to the Department by the person or persons who are responsible for support of such children ... in an amount equal to the amount of public assistance money so paid.
Thus, where TANF funds are distributed for the benefit of a minor child, the person “responsible” for supporting that child incurs a debt and is obligated to repay the Department an amount equivalent to the funds distributed. Here, Hodges does not argue that she was not “responsible” for supporting her child, nor does she argue that no TANF debt was incurred.
Code § 63.2-1908 also provides that: “Debt created by an administrative support order shall not be ... collected from a noncustodial parent who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.” (Emphasis added). Thus, to qualify for this limited statutory reprieve, the individual must be both: (1) a non-custodial parent, (2) who is receiving public assistance moneys. If one of these prerequisites is not met (i.e., the individual is not a noncustodial parent or is not receiving public assistance money), then this limited exception does not apply, and the Depart *135 ment is free to pursue the individual for any debt that might be owed.[7]
Here, Hodges is contending that this statutory exception should apply because she is currently receiving public assistance moneys in the form of food stamps and Medicaid. The plurality has rejected her argument, holding that food stamps and Medicaid are not equivalent to “public assistance moneys.” However, I would hold that the statutory exception my colleagues seek to interpret does not apply in this case because the trial court expressly found that Hodges is “not now a noncustodial parent.” Hodges has not appealed this factual finding.[8] Thus, because Hodges is not currently a “noncustodial parent,” the statutory exemption does not apply, regardless of whether she is currently receiving public assistance moneys.
Hodges argues on appeal that the parties have implicitly, if not directly, agreed that she is a non-custodial parent. However, where the parties fail to appeal a finding of fact, that finding becomes conclusive and binding on this Court. See, e.g., Tran v. Gwinn, 262 Va. 572, 582, 554 S.E.2d 63, 69 (2001). The parties simply cannot dispose of an issue on appeal by rewriting the trial court’s findings of fact — they may as easily agree that the sky is green, but such an agreement would hardly make it so.
*136 Moreover, the trial court’s finding that Hodges is “not now a noncustodial parent” is supported by evidence in the record. The resolution of this issue necessitates an inquiry into who, exactly, is a “noncustodial parent” within the meaning of the statute. Because I am of the opinion that a “noncustodial parent” is not necessarily equivalent to an “obligor parent,” I believe the trial court correctly found that Hodges — although an obligor parent — is “not now a noncustodial parent.”
“Noncustodial parent” is defined as a “responsible person who is or may be obligated under Virginia law for support of a dependent child or child’s caretaker.” Code § 63.2-1900; see also 22 VAC 40-880-10. Although the current statute does not define “responsible person,” former Code § 63.1-250 defined “responsible person” as “any obligor or person obligated under Virginia law for support of a dependent child or the child’s caretaker.” See 22 VAC 40-880-10 (defining “noncustodial parent” and incorporating by reference definition of “responsible person” from “Code § 63.1-250”). Because a “responsible person” encompasses “any obligor or person,” a non-custodial parent is, therefore, “any ‘obligor or person ‘ who is or may be obligated under Virginia law for support of a dependent child or child’s caretaker.”
Both the plurality and the dissent suggest that a “noncustodial parent” is merely an obligor, or a parent who has already incurred a TANF debt. However, the definition of “noncustodial parent” does not specifically incorporate the phrase “obligor,” instead using the term “responsible person.” And, as noted above, a “responsible person” is “any obligor or person obligated under Virginia law for support of a dependent child or the child’s caretaker.” Code § 63.1-250 (repealed effective Oct. 1, 2002) (emphasis added). A “responsible person,” then, is not necessarily an “obligor.” As a result, a “noncustodial parent” might be, but is not necessarily, an obligor. See, e.g., Smith v. Commonwealth, 17 Va.App. 37, 40, 434 S.E.2d 914, 915 (1993) (“While certain conduct might be construed to fall within the definitions of both “use” and “display,” the two words are not synonymous. The definition of neither neces *137 sarily includes the definition of the other.”). Thus, I cannot agree that “noncustodial” is synonymous with “obligor.”
This conclusion is farther supported by the fact that the General Assembly defined “obligor” separately from, and more broadly than, “noncustodial parent.” See Code § 63.2-1900. And, as the plurality and dissent correctly point out, “[w]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things,” Forst v. Rockingham, Poultry Mktg. Coop., 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981), and “no part of an act should be treated as meaningless unless absolutely necessary,” Garrison v. First Fed. Sav. & Loan Assoc., 241 Va. 335, 340, 402 S.E.2d 25, 28 (1991). Thus, the terms “noncustodial” and “obligor” cannot be read interchangeably, but must instead be given separate and distinct meanings. See Indus. Dev. Auth. v. Bd. of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002) (“When the General Assembly uses two different terms in the same act, those terms are presumed to have distinct and different meanings.”).
Moreover, “[i]n interpreting a statute, we ‘assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.’ ” Dep’t of Med. Assistance Servs. v. Beverly Healthcare, 41 Va.App. 468, 493-94, 585 S.E.2d 858, 871 (2003) (quoting City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992)) (internal quotations omitted), aff'd, 268 Va. 278, 601 S.E.2d 604 (2004). Here, had the General Assembly intended for the statutory exception contained in Code § 63.2-1908 to apply to “obligor” parents who are receiving public assistance money, it presumably would have used the term “obligor” — which is defined and used throughout the statute — rather than the term “noncustodial.” Interposing “obligor” in Code § 63.2-1908 in place of “noncustodial” would effectively rewrite the statutory provision — a task suited for the legislature, not this Court. See Barr v. Town & Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (“ ‘Courts are not permitted to rewrite *138 statutes. This is a legislative function.’ ” (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))).
In my view, then, the statutory definition of “noncustodial parent” encompasses any person who “is or may be obligated under Virginia law for support of a dependent child.”[9] Under Virginia law, all parents owe a duty of support to their children, with the exception of parents whose parental rights have been terminated through adoption or another formal legal proceeding. See, e.g., Featherstone v. Brooks, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979) (“Both parents of a child owe that child a duty of support during minority.”). Accordingly, to give effect to the adjective “non-custodial,” I believe this statutory definition must be read in conjunction with the phrase “custodial parent,” which is defined as “the natural or adoptive parent with whom the child resides; a stepparent or other person who has physical custody of the child and with whom the child resides; or a local board that has legal custody of a child in foster care.” Code § 63.2-1900; see also Dep’t of Med. Assistance Servs. v. Beverly Healthcare, 268 Va. 278, 285, 601 S.E.2d 604, 608 (2004) (“[T]he various parts of [a] statute should be harmonized so that, if practicable, each is given a sensible and intelligent effect.”). Thus, if a parent is obligated under Virginia law to support a child, but does not otherwise fall within the definition of “custodial parent,” that parent is “noncustodial” within the meaning of the statute.
In the parties’ written statement of facts, they jointly assert that the child “returned to [Hodges] home in 1995 and has continued to reside in the home with [Hodges] and her younger sibling.” This statement clearly supports the trial court’s conclusion that Hodges is “not now a noncustodial parent.” *139 That is, because the child currently “reside[s]” with Hodges, her natural parent, Hodges is a “custodial parent” within the meaning of the statute. See Code § 63.2-1900 (defining “custodial parent” as, inter alia, a “natural ... parent with whom the child resides (emphasis added))”. And, because Hodges is a “custodial parent,” she is, as the trial court found, “not now a noncustodial parent.” (Emphasis added).
Accordingly, I do not believe that we either need to or should reach the issue of whether Hodges’ receipt of food stamps and Medicaid qualify her as an individual who is “receiving public assistance moneys” within the meaning of the statute. Rather, because Hodges is not a non-custodial parent, the limited exemption contained in Code § 63.2-1908 simply does not apply.
For these reasons, I would affirm the judgment of the trial court, and I therefore concur in the result reached by the plurality.

. Code § 63.2-1908 also provides that a parent will not incur a TANF debt during the period of time that she is both: (1) a non-custodial parent, and (2) receiving public assistance moneys. So, for example, if Hodges had received public assistance moneys while the child was living with her grandmother, there would have been no TANF debt to collect.

. Hodges did object to the trial court's final order on the ground that she "believes that she is a non-custodial parent.” Although Hodges asserts that the "Question Presented” in her opening brief encompasses this issue, she did not include it in her initial assignments of error to this Court. Thus, we are barred from considering it. See Megel v. Commonwealth, 37 Va.App. 676, 679, 561 S.E.2d 21, 22 (2002) (noting that, "on appeal, we will consider only those arguments presented in the petition for appeal and granted by this Court” (internal quotations omitted)); see also Cirrito v. Cirrito, 44 Va.App. 287, 309, 605 S.E.2d 268, 278 (2004).

. Compare Code § 63.2-1900 (defining "noncustodial parent” as "a responsible person who is or may be obligated under Virginia law for support of a dependent child or child’s caretaker” (emphases added)); with 22 VAC 40-880-10 (defining "non-custodial parent” and incorporating by reference the definition of "responsible person” contained in “Code § 63.1-250”); and Code § 63.1-250 (repealed effective Oct. 1, 2002) (defining "responsible person” as "any obligor or person obligated under Virginia law for support of a dependent child or child's caretaker” (emphasis added)).