COUNTY OF FAIRFAX, ET AL.

V.

SOUTHERN IRON WORKS, INC., ET AL.

Record No. 910097

November 8, 1991

Present: Carrico, C.J., Compton, Stephenson, Whiting, and Keenan, JJ., and Poff, Senior Justice, and Harrison, Retired Justice

436

*John R. Walk (Everette G. Allen, Jr.; Robert T. Billingsley; David T. Stitt, County Attorney; Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellants.

*M. Langhorne Keith (Paul C. Skelly; John Holland Foote; Jerry K. Emrich; Thomas F. Farrell; Hogan and Hartson; Hazel & Thomas; Walsh, Colucci, Emrich and Lubeley; McGuire, Woods, Battle and Boothe*, on brief), for appellees.

*Amicus Curiae*: The Fairfax County Federal of Citizens Associations, et al. (Walter G. Talarek, on brief), for appellants.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, Fairfax County seeks reversal of a decision in which the trial court declared invalid the Zoning Ordinance Amendment (ZOA) enacted by the Board of Supervisors on December 11, 1989. The trial court declared the ZOA invalid on four separate procedural grounds. We conclude that the trial court erred in invalidating the ZOA on each of the four grounds upon which it relied. Therefore, we will reverse its decision, and based on this action, do not reach the additional issues raised here by the County.

Prior to December 11, 1989, the Fairfax County Zoning Ordinance allowed office buildings in all Commercial and Industrial Districts as a permitted use. This meant that landowners could construct offices in these districts without obtaining special approval from the Board of Supervisors. On September 11, 1989 the Board instructed the County staff to draft proposed amendments to the Commercial and Industrial District provisions. The staff responded by developing the ZOA, which, among other things, changed office use from a permitted use to a special exception use. This meant that landowners in the affected districts would be required to obtain permission from the Board before constructing office buildings. Although the ZOA revised both Commercial and Industrial District provisions, this appeal pertains solely to the revision of the Ordinance as it pertains to the Industrial Districts.

On September 18, 1989, the Board considered the staff recommendations and concluded that the existing Zoning Ordinance contained "provisions in the Commercial and Industrial Districts which make it impossible to effectively plan; and . . . [that] the public necessity, the convenience, general welfare and good zoning practice require[d]" their action. The Board then voted to author-

ize the advertisement of the ZOA and referred it to the County Planning Commission (Commission) for its recommendations.

After a series of public hearings and upon receiving the recommendations of the Commission, the Board met on December 11, 1989 to give final consideration to the ZOA. During the morning session of this meeting, the Board had various documents before it, including a "Board Package" containing several attachments. Attachment 1 consisted of a chart comparing the Commercial and Industrial provisions of the existing Zoning Ordinance to the amendments of these sections proposed by the staff and the Commission. Attachment 2 contained the Commission's recommended amendments to the Industrial District provisions. Attachment 7 consisted of the Commission report, which included a summary of its recommendations, as well as relevant transcripts of Commission meetings. After evaluating and discussing the Commission's recommendations, the Board directed the staff to develop final motions (Motions Package) conforming to what the Board had approved during the morning session.

The Motions Package consisted of a series of motions and attachments reflecting all of the amendments to the Commercial and Industrial Districts. Motion II, the only motion challenged in this appeal, stated:

## II. *INDUSTRIAL DISTRICTS*

I move that the Board of Supervisors adopt the proposed amendments to the industrial districts as recommended by the Planning Commission with the following changes:

- Whereas office will be permitted only by special exception up to the existing FAR's,[1] all other uses in the revised industrial districts will be permitted to the revised FAR's by right as recommended by the Planning Commission and with FAR's above that by special exception only to the existing FAR's; and

- Establishments for scientific research, development and training will be permitted in the I-5 district only by special exception up to the existing FAR.

This is attachment 3 dated December 11, 1989.

[1] FAR (floor area ratio) is "determined by dividing the gross floor area of all buildings on a lot by the area of that lot." County of Fairfax Zoning Ordinance, § 2-300.

Attachment 3 to the Motions Package, entitled "Additional Revisions To Planning Commission Recommendation On Industrial Districts," contained the Board's changes to the Commission's recommendations. However, the Motions Package did not contain a full text of the Board's amendments regarding the Industrial Districts.

The Board adopted the Motions Package containing the ZOA in the afternoon session of the December 11, 1989 meeting. The ZOA removed office use as a permitted use in Industrial Districts 1 through 6, instead making office use a special exception use. It also revised certain Industrial District Floor Area Ratios (FARs) for various uses including office use.

Following the adoption of the ZOA, the staff compiled a complete version of what the Board had passed, relying on the various documents before the Board during the December 11, 1989 meeting. The staff compilation was completed within one week, distributed as a loose-leaf supplement entitled ZO-89-185, and added to the Zoning Ordinance. Because the ZOA was silent as to its effective date, the staff inserted an effective date of 12:01 a.m., December 12, 1989.

Shortly thereafter, the County Zoning Administrator realized that ZO-89-185 contained an error in the numbering of certain paragraphs denoting uses in the Industrial Districts. Prior to the enactment of ZO-89-185, an earlier ordinance amendment had added a new use, thereby requiring a renumbering of certain paragraphs. This renumbering was not taken into account in the staff's compilation of ZO-89-185. Thus, while the Board's motion called for deletion of office use as a permitted use, ZO-89-185 deleted permitted uses *other than office use* due to the insertion of incorrect use numbers. The Zoning Administrator testified that this was a mistake made by the staff. The incorrect use numbers were subsequently corrected.

Additionally, there were two other discrepancies in the compilation of the Motions Package and ZO-89-185. First, Attachment 3 to the Motions Package amended, among other things, Section 9-515 of the Zoning Ordinance by providing that "[i]n the I-1, I-2, I-3, I-4, I-5 and I-6 Districts, the Board may approve a special exception to allow office uses." However, the staff failed to include the I-1 and I-2 districts in section 9-515 of ZO-89-185. The Zoning Administrator stated that this was a staff mistake; however, it was never corrected. Second, while the Commission recommended

that use number 17 (office use) be included in Section 9-502, the amendment to that section presented in the Motions Package did not include this use. The staff's compilation of ZO-89-185, however, *did* include use 17.

Two hundred sixty-nine Bills of Complaint were filed challenging ZO-89-185 on procedural and substantive grounds. The trial court ordered the cases consolidated and established a Litigation Steering Committee (LSC) to coordinate the complainants' cases. The trial court also ordered the LSC to file a single pleading containing all of the procedural complaints.

After a hearing on these procedural issues, the trial court sustained the complainants' contention that the Board's initiating resolution adopted on September 18, 1989, was insufficient in that it failed to state a valid public purpose as required by Code § 15.1-491(g). According to the trial judge, "the statement of purpose must be the underlying purpose, not the generality of public welfare, convenience, et cetera." Additionally, the trial court found that the process of enacting ZO-89-185 violated the complainants' right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The trial court also held that the Board did not use proper procedures to enact ZO-89-185, holding that the "Board of Supervisors did not have before it the full text of the purported Ordinance in its 'Motion's Package.'" Lastly, the trial court found that the Board unlawfully delegated to the staff the job of preparing ZO-89-185 after its purported adoption on December 11, 1989.

The County first argues that the trial court erred in ruling that the Board's resolution initiating the ZOA failed to state a public purpose as required by Code § 15.1-491(g). In its initiating resolution, the Board stated:

WHEREAS, the existing Zoning Ordinance contains provisions in the Commercial and Industrial Districts which make it impossible to effectively plan; and

WHEREAS, the public necessity, the convenience, general welfare and good zoning practice requires such action, now therefore, I move that the board . . . [adopt listed amendments].

The trial court held that this statement of purpose was insufficient because it did not state the underlying or "real" purpose of the

Board's proposed action. The trial court cited *Town of Vinton v. Falcun Corp.*, 226 Va. 62, 65, 306 S.E.2d 867, 869 (1983), in support of its ruling. The County argues that the reference in *Town of Vinton* to an underlying purpose requirement should not be construed to require statement of a purpose *separate* from those directly set forth in Code § 15.1-491(g). Further, the County argues that *Town of Vinton* should not control the case before us because the issue there was not whether a proper purpose was stated in the adoption of the disputed legislation. Rather, the County asserts that the issue decided in *Town of Vinton* was whether that locality had the authority to adopt "emergency" zoning legislation without notice, public hearings, and referral to its planning commission.

The appellees respond that the trial court properly relied on *Town of Vinton*. They also argue that because the General Assembly has not addressed the question of an underlying purpose in any of its amendments to Code § 15.1-491 since the *Town of Vinton* decision, it is presumed to have acquiesced in this Court's statement therein. *See Burns v. Stafford County*, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984); *Jones Construction Co. v. Martin*, 198 Va. 370, 378, 94 S.E.2d 202, 207-08 (1956).

Code § 15.1-491(g), which authorizes local governing bodies to amend their zoning ordinances, provides that:

> *Whenever the public necessity, convenience, general welfare, or good zoning practice require*, the governing body may by ordinance amend, supplement, or change the regulations, district boundaries, or classifications of property. Any such amendment may be initiated (i) by resolution of the governing body, or (ii) by motion of the local commission, or (iii) by petition of the owner . . . . Any such resolution or motion by such governing body or commission proposing the rezoning shall state the *above* purposes therefor.

(Emphasis added.)

In its initiating resolution, the Board found that each of the four purposes set forth in Code § 15.1-491(g) required revision of the Zoning Ordinance.

■ We find that this statement of purpose was sufficient to meet the requirement of Code § 15.1-491(g). The plain language

of that statute provides that in order to initiate a zoning ordinance amendment, the governing body must state the "above purposes" for the amendment. We believe that in its reference to "above purposes," the General Assembly has directed local governing bodies to determine which of the four previously-listed purposes necessitates their action, and to state for which of those purposes it is acting.

The Board complied with Code § 15.1-491(g) by finding that all of the four purposes set forth in Code § 15.1-491(g) required their action to amend the Zoning Ordinance. To interpret the statute otherwise, as urged by the appellees, would require us to ignore the General Assembly's unambiguous use of "above" in directing the governing body to make a legislative finding as to which purpose or purposes designated in the statute required their action.

We also disagree with the appellees's assertion that this Court's reference in *Town of Vinton* to Code § 15.1-491(g), and its requirement that an underlying purpose be stated, means that a purpose separate from those listed in the statute must be cited by the governing body. In *Town of Vinton*, this Court was not deciding what constituted a valid statement of purpose under Code § 15.1-491(g). Rather, the issue presented in that case was whether the statutory requirements of notice, public hearings, and referral to the Town's planning commission could be waived where the Town purported to adopt "emergency" zoning legislation. In holding that the statutory requirements must be complied with, this Court referenced those requirements, including the requirement of a written resolution stating the underlying purpose of the proposed amendment. *Town of Vinton*, 226 Va. at 65-66, 306 S.E.2d at 869.

■ We find that this Court's statement in *Town of Vinton*, that Code § 15.1-491(g) requires that the purpose of an amendment be stated by the governing body in its motion or resolution, is consistent with what we have found to be the plain meaning of that statute. "Underlying" is defined as meaning "basic" or "fundamental." Random House Dictionary of the English Language 2062 (2d ed. 1987). Thus, the underlying purpose of a resolution initiating legislation is the basic or fundamental objective which necessitates the governing body's action.

■ In the case before us, the Board found that all four fundamental purposes set forth in Code § 15.1-491(g) required its ac-

tion. This legislative finding was made in accordance with the plain language of Code § 15.1-491(g) and, therefore, we find that the trial court erred in concluding that the Board's resolution failed to state a valid public purpose.

■ The County next argues that the trial court erred in holding that the process by which the ZOA was enacted unlawfully deprived the appellees of their procedural due process rights. The County asserts that procedural due process rights serve as a protection against deprivation of life, liberty, or property by adjudication, rather than by legislation. Thus, the County argues that statutory notice and hearing requirements, not constitutional due process requirements, should have been the focus of the trial court's review of the legislative process in which the ZOA was enacted. Since the trial court held that the statutory notice and hearing requirements were met in this case, the County contends that the trial court had no basis for its finding that the appellees were denied procedural due process.

In its order, the trial court made a specific finding that "[t]he process of enacting ZO 89-185 unlawfully deprived the Complainants of their rights to *procedural* due process." (Emphasis added.) Procedural due process, however, is a constitutional right which applies to individuals in adjudicative or quasi-judicial proceedings. *San Diego Bldg. Contractors Ass'n. v. City Council of San Diego*, 13 Cal.3d 205, 211, 118 Cal. Rptr. 146, 149, 529 P.2d 570, 573 (1974). *See Bi-Metallic Inv. Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915). Therefore, we hold that, because the enactment of the ZOA was a legislative rather than adjudicative or quasi-judicial exercise, the County need only meet *statutory* notice and hearing requirements. Since the trial court found that the statutory notice and hearing requirements of Code § 15.1-493 were met, we conclude that the trial court erred in finding that the appellees' rights to procedural due process were violated.

■ The appellees, however, contend that the trial court found a due process violation arising out of the failure of the ZOA to satisfy the "vagueness" standard set forth in *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The trial court's final order does not indicate that it based its due process ruling on an interpretation of *Grayned*. Nevertheless, we do not find such a due process violation here. In *Grayned*, the Supreme Court stated that an ordinance is unconstitutionally vague if it fails to "give the person

of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.*

In the case before us, however, the appellees do not contend that they cannot understand the meaning of the ZOA provisions. Instead, they assert that there was confusion in the actions taken by the Board in adopting the Industrial District provisions, and that as a result, it is unclear whether those provisions were validly incorporated into the Ordinance. Because this raises the issue whether the ZOA was validly adopted, rather than an issue of the substantive meaning of its provisions, we find that the *Grayned* standard is not implicated here.

The County next argues that the trial court erred in holding that the Board's process in enacting the ZOA was vague and confusing, and not in compliance with the "proper procedures" for the enactment of such legislation. The trial court ruled that the Board "did not comply with proper procedures for enacting ordinances in that, *inter alia*, the Board of Supervisors did not have before it the full text of the purported Ordinance in its 'Motions Package,' . . . and did not properly and lawfully adopt the full text of an Ordinance on December 11, 1989, when it purported to enact ZO 89-195."

The County contends that the trial court was in error in holding that the Board was required to have the full text of the proposed ordinance before it in the Motions Package in order for the ordinance to be validly enacted. The County asserts that the Board had the Commission's recommendations for the Industrial Districts before it, both incorporated by reference in the Motions Package, and as an attachment to the Board Package.

The appellees respond that the trial court did not err in its ruling because the Motions Package did not specify which, if any, of the documents relating to the Commission's recommendations were to be incorporated into the ZOA. Further, the appellees assert that the trial court was correct in finding that the Board could not validly adopt an ordinance amendment unless it had the full text before it.

We find that the trial court erred in ruling that the ZOA was not validly enacted, *inter alia*, because its full text was not before the Board in its Motions Package. Code § 15.1-486 authorizes counties and municipalities to regulate, by ordinance, the use of land and buildings, including the size, height, area, and location of those buildings. Neither that nor any other code section dic-

tates the form that an ordinance or ordinance amendment must take in order to be validly enacted. Further, the County code does not specify any particular form required for the passage of an ordinance amendment. Finally, Article VII, § 7 of the Virginia Constitution restricts form only in that "[o]n final vote on any ordinance or resolution, the name of each member voting and how he voted shall be recorded."

In the absence of statutory or local ordinance provisions to the contrary, drafts of proposed changes in local ordinances may incorporate by reference other documents, provided that the other documents are sufficiently identified and made part of the public record. *See Friedman* v. *Goodman*, 219 Ga. 152, 159, 132 S.E.2d 60, 65 (1963); *Scott Paper Co.* v. *City of Anacortes*, 90 Wash.2d 19, 30-31, 578 P.2d 1292, 1299 (1978); *Raymond* v. *Baehr*, 282 Minn. 109, 112, 163 N.W.2d 51, 53 (1968); *City of Tucson* v. *Stewart*, 45 Ariz. 36, 44, 40 P.2d 72, 75 (1935). Therefore, the issue before us here is whether the Commission's recommendations regarding the Industrial Districts were sufficiently identified in the Motions Package so as to have been incorporated by reference therein.

▮▮▮▮ Initially, we find that the language of the Motions Package was sufficiently clear to manifest the Board's intention to delete office use as a permitted use in the Industrial Districts. Motion II specifically refers to the fact that "office will be permitted only by special exception up to the existing FAR's." Motion II also states: "I move that the Board of Supervisors adopt the *proposed amendments to the industrial districts as recommended by the Planning Commission* with the following changes . . . ." (Emphasis added.) This italicized language virtually mirrors the title to Attachment 2 of the Board Package, which was also before the Board at the December meeting. The title to Attachment 2 reads: "Proposed Amendment To The Industrial Districts As Recommended By The Planning Commission." That Attachment set forth for the Board all of the Commission's recommendations and showed the textual changes to the Ordinance needed to effect those changes. Attachment 3 to the Motions Package detailed the Board's changes to the Commission's recommendations. Given the above documents which were before the Board at the time it voted on the Motions Package and the above-cited language of Motion II of that Package, we find that the Commission's recommendations were incorporated by reference into the Motions Package.

The appellees also argue that there were several versions of the Commission's recommendations, and that without a more specific reference in the Motions Package, it was unclear which recommendations the Board intended to incorporate. We disagree because, although there were four documents which referenced the Commission's recommendations, none of them contained conflicting provisions as to the Commission's recommendations for the Industrial Districts. These four documents were: (1) Attachment 1 to the Board Package which consisted of the staff's summary of the Commission's proposed changes to the Commercial and Industrial Districts, as well as the staff's response to these recommendations; (2) Attachment 2 to the Board Package which consisted of the text amendments necessary to accomplish the Commission's recommendations; (3) a two-page summary of the Commission's recommendations, contained in Attachment 7 to the Board Package; and (4) verbatim transcripts of the November 8 and 9, 1989 Commission meetings.

In each of these four documents, the Commission's position was clear and its recommendations did not conflict. Therefore, we find that since the Motions Package, which proposed adoption of the Commission's recommendations for the Industrial Districts, contained a specific reference to the fact that office use was to be permitted only by special exception, and since the Commission's recommendations set forth in each of the four documents before the Board did not conflict with each other, those recommendations were sufficiently identified and incorporated by reference.

We also find that *Rollins* v. *Gordonsville*, 216 Va. 25, 215 S.E.2d 637 (1975), cited by the appellees, does not affect our decision here. In *Rollins*, the defendant was convicted of driving under the influence of alcohol, based on a Town ordinance which incorporated by reference "all of the provisions of the laws of Virginia contained in Title 18.1, Article 6, of the Code of Virginia, as amended, and in force on July 1, 1972." *Id.* at 25-26, 215 S.E.2d at 637. This reference was found by this Court to be vague and indefinite since the ordinance did not state which chapter of Article 6 of Title 18 was being incorporated. Significantly, at the time the ordinance was adopted, two of the eight chapters found in Title 18.1 contained an Article 6. In invalidating the ordinance in question, this Court relied on the well-established principle that penal ordinances must be strictly construed and may not be extended by implication. *Id.* at 26, 215 S.E.2d at 638.

██ We find that the case before us is distinguishable from *Rollins* on two grounds. First, ZO-89-185 is not a penal ordinance, so the controlling principle of *Rollins* is not applicable here. Second, the two Article 6 provisions at issue in *Rollins* were totally different in substance. In contrast, in the case before us, the four documents referring to the Commission's recommendations did not conflict in their substantive provisions. Further, as we have noted, the Motion's Package itself referred to the fact that "office will be permitted only by special exception up to the existing FAR's." Therefore, the deletion of office use as a permitted use was specifically referred to in the Motions Package, as well as incorporated by reference to the Commission's recommendations. For these reasons, we find that *Rollins* is inapposite. Thus, we conclude that the trial court erred in ruling that the Board's process in enacting the ZOA was vague and confusing, and not in compliance with the proper procedures for the enactment of such legislation.

The County next argues that the trial court erred in finding that the Board unlawfully delegated its legislative power to the County staff by directing it to prepare the full text of the ZOA after the Board's vote on December 11, 1989. The trial court held that "[t]he process of enacting ZO 89-185 unlawfully, impermissibly and in violation of Dillon's Rule and the corollary thereto delegated to the staff the task of preparing the ZO 89-185 after its purported adoption by the Board on December 11, 1989."

██ The Dillon Rule of strict construction controls this Court's determination of the legislative powers of local governing bodies. "The Dillon Rule provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *City of Richmond v. Confrere Club of Richmond*, 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990).

The County contends that the Board did not unlawfully delegate a legislative function to the staff when it directed it to compile the full text of the ordinance. Rather, the County asserts that the Board merely referred the duly enacted ZOA to the staff to perform the ministerial function of compiling the full text of the Ordinance amendment. Code § 15.1-37.3 expressly authorizes a county to codify or recodify its ordinances. Code § 15.1-37.3 further provides that "[s]upplements for such codifications or

recodifications may be prepared . . . at the direction of the governing body of the county." Thus, the County contends that the Board performed the *legislative* act of adopting the Motions Package which contained amendments to the Zoning Ordinance, while lawfully directing the staff to perform the *ministerial* act of preparing the supplement setting forth these amendments.

· The appellees respond that the trial court correctly found that the Board improperly delegated to the staff the task of determining the substance of the ZOA after its purported adoption at the December 11, 1989 meeting. According to the appellees, the Board adopted the ZOA in concept only and left the actual wording and details for the staff to develop. Thus, the appellees contend that the staff did more than merely supplement a duly enacted law. Rather, they argue that the staff actually made substantive changes, omissions, and additions to the ZOA. We find these arguments unpersuasive, and we hold that the trial court erred in ruling that the Board unlawfully delegated to the staff the task of preparing ZO-89-185.

█ Code § 15.1-486 provides that "[t]he governing body of any county or municipality may, by ordinance," develop zoning regulations. Additionally, this Court has held that "only the governing body of a locality may zone or rezone property and then only by ordinance." *Laird* v. *City of Danville*, 225 Va. 256, 262, 302 S.E.2d 21, 24 (1983). Thus, only the Board has express authority to adopt zoning ordinances and the staff may not make substantive determinations of legislative intent which have the effect of changing what was duly adopted by the governing body. However, Code § 15.1-37.3 does permit the Board to direct the staff to prepare supplements which contain the Board's recodification of the Ordinance. The supplements are usually in the form of replacement pages to the Zoning Ordinance. Code § 15.1-37.3 further provides that no "changes, alterations, amendments, deletions or additions of a substantive nature" may be made in preparing the supplement, unless the changes are adopted by the governing body.

█ The appellees contend that the staff made several substantive changes and omissions in compiling ZO-89-185 which were not subsequently adopted by the Board. First, the appellees argue that in compiling ZO-89-185, the staff had to draw substantive conclusions as to which Commission recommendations were intended to be adopted by the Board, as there were several different

documents referencing the Commission recommendations before the Board at the time the ZOA was adopted. However, as we stated above, these versions were not inconsistent, and the intent of the Board was clear. Thus, we find that the staff was merely required to transfer information from one document to another and that no substantive changes were required.

Second, the appellees contend that the staff made a substantive deletion from Attachment 3 of the Motions Package in failing to include districts I-1 and I-2 in section 9-515 of ZO-89-185. However, the record before us contains uncontradicted testimony from the Zoning Administrator that the staff inadvertently left these sections out of ZO-89-185. Further, the record does not show that the trial court made a factual finding to the contrary. Therefore, we find no basis in the record to support a conclusion that this omission by the staff constituted an unlawful exercise of legislative authority.

Third, appellees point out that the staff failed to include use number 17 (office use) in section 9-502 in the Motions Package, but included this use in section 9-502 in ZO-89-185. However, Attachment 2 to the Board Package, which was incorporated by reference by Motion II, *does* include use 17 in section 9-502. The Zoning Administrator's testimony, which was uncontradicted, indicated that the Motions Package was only intended to show additional changes to the Planning Commission recommendation, and was not intended to be inclusive of all Board recommendations. Her testimony further established that when the staff prepared ZO-89-185, they incorporated use 17 from the Planning Commission recommendations into the ZO-89-185. Therefore, given our holding that the Planning Commission recommendations were validly incorporated by reference, we find no basis in the record to support a conclusion that this was a substantive change, rather than simply the incorporation of the Planning Commission recommendations into ZO-89-185.

Finally, the appellees contend that the staff improperly inserted the effective date of ZO-89-185 on its own initiative. The Motions Package was silent as to the effective date of the ZOA. Section 18.210 of the Zoning Ordinance provides that an amendment to the Zoning Ordinance "shall become effective on the date of Board approval." The trial court received testimony that when a motion passed by the Board fails to state an effective date, the

common practice of the staff is to insert an effective date of 12:01 a.m. the day following adoption.

█ We agree with the appellees that the Motions Package does not show that the Board adopted December 12, 1989 as the effective date of the ZOA. However, none of the complainants here have alleged that they were directly affected by the effective date being December 12, 1989 rather than December 11, 1989. Thus, we find that they are not entitled to seek equitable relief on this basis. *See Cupp* v. *Board of Supervisors*, 227 Va. 580, 589-90, 318 S.E.2d 407, 411-12 (1984); *Mayor & Council of City of Athens* v. *Mu Beta of Chi Omega House Corp.*, 219 Ga. 423, 425-26, 133 S.E.2d 888, 889-90 (1963).[2]

█ Therefore, because we find that the staff did not make any substantive changes to the Board-enacted ZOA, we hold that the trial court erred in finding that the Board unlawfully delegated legislative power to the staff. The Board is expressly authorized under Code § 15.1-37.3 to direct its staff to compile a supplement setting forth duly enacted amendments to the Zoning Ordinance. Because no substantive powers were delegated to or exercised by the staff, the Board's actions were lawful.

For the reasons stated, we will reverse the judgment of the trial court and will remand this matter for consideration of the remaining issues in this cause.

*Reversed and remanded.*

---

[2] It is unclear whether the appellees also argue that the misnumbering of paragraphs in the Industrial District sections of ZO-89-185 was a substantive change by the staff. Nevertheless, we find that, in light of the Zoning Administrator's uncontradicted testimony that this was a mistake by the staff, and evidence that the incorrect numbers were subsequently corrected, there is no basis in the record to support a conclusion that this misnumbering constituted an unlawful exercise of legislative authority.