Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

JOHN D. SHILLING, ET AL.

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
June 10, 2004

v.  Record No. 031907

SANDRA J. JIMENEZ, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
J. Howe Brown, Jr., Judge Designate

The dispositive question presented by this appeal is whether a landowner, aggrieved by the local governing body's approval of a subdivision of neighboring lands, may attack that approval indirectly by suit against the subdividers and their successors in title.  We answer the question in the negative.

Because the appeal questions the trial court's action in sustaining demurrers, only the facts as set forth in the bill of complaint will be summarized here.  Sandra J. Jimenez owned a tract of land in Loudoun County, containing 15.215 acres, located on the south side of State Route 725.  The property was zoned "A-3," a classification that would have permitted its subdivision into 3-acre lots, provided it had 240 feet of frontage on Route 725 and met certain other criteria not material here.  The Jimenez property failed to qualify for such division into 3-acre lots because it lacked  sufficient road frontage.

However, pursuant to enabling legislation,[*] Loudoun County had adopted § 1243.04 of its Subdivision Ordinance, captioned "Family Subdivisions," which permits lots fronting on "private access easement roads" rather than public roads. Such a lot could only be conveyed to "a member of the [owner's] immediate family," a category that included brothers, sisters and parents. The ordinance provided that such a subdivision "shall not be for the purpose of circumventing this chapter. . . ." If a family subdivision grantee should convey such a lot within one year after the date of approval of the subdivision plat, the ordinance raised a presumption of intent to circumvent the ordinance and authorized the Director of the Department of Building and Development to "take any reasonable actions necessary to ameliorate the effect of such circumvention,

---

[*] **§ 15.2-2244. Provisions for subdivision of a lot for conveyance to a family member.** — A. In any county and the City of Suffolk a subdivision ordinance shall provide for reasonable provisions permitting a single division of a lot or parcel for the purpose of sale or gift to a member of the immediate family of the property owner, subject only to any express requirement contained in the Code of Virginia and to any requirement imposed by the local governing body that all lots of less than five acres have reasonable right-of-way of not less than ten feet or more than twenty feet providing ingress and egress to a dedicated recorded public street or thoroughfare. Only one such division shall be allowed per family member, and shall not be for the purpose of circumventing this section. For the purpose of this subsection, a member of the immediate family is defined as any person who is a natural or legally defined offspring, spouse, sibling, grandchild, grandparent, or parent of the owner. In addition, any such locality may include aunts,

2

including without limitation recommending to the Board of Supervisors the adoption of an Ordinance vacating said subdivision."  Id. "Enforcement Provisions" (B).

On February 8, 2001, Sandra Jimenez applied for a "Family Subdivision" that would divide her parcel into three lots:  "Lot 1," containing 4.0 acres, to be conveyed to her mother, Lidia A. Beltran, "Lot 2," containing 5.2738 acres, to be conveyed to her sister, Jenny P. Andrade, and "Lot 3," containing 5.8301 acres, to be retained in her own name.  As an inducement to the approval of the subdivision by Loudoun County, Jimenez, Beltran and Andrade made affidavits to the effect that the subdivision was made for the purpose of "keeping the family estate within the immediate family . . . [and] not for the purpose of short-term investment or for resale after division to those outside of the immediate family."  The affidavits were recorded among the land records.  The county, relying on the affidavits, approved the proposed family subdivision on June 29, 2001.  A deed of dedication creating the subdivision was recorded on July 3, 2001, and on the same day deeds were recorded conveying Lots 1 and 2 to Beltran and Andrade, respectively.

On June 12, 2002, by a recorded power of attorney, Beltran appointed Jimenez her attorney-in-fact "to bargain, sell, grant

---

uncles, nieces and nephews in its definition of immediate family.

and convey [Lot 1] . . . as my said attorney shall deem most for my advantage and profit."  On November 1, 2002, deeds were recorded whereby Jimenez, as attorney-in-fact for Beltran, conveyed Lot 1 to Cox at Purcellville, L.L.C. (Cox), and Andrade conveyed Lot 2 to the same grantee.  On October 30, 2002, before the deeds had been recorded, Cox had encumbered Lot 1 by a deed of trust securing a credit-line loan from Virginia Commerce Bank.

On February 11, 2003, John D. Shilling, Trustee, and La Isla Corporation, a Delaware corporation authorized to do business in Virginia, (the neighbors) filed a Bill of Complaint in the trial court against Jimenez, Beltran, Andrade (the subdividers), Cox, and Virginia Commerce Bank and the trustees under the latter's deed of trust (collectively, the Bank). Neither the Loudoun County Board of Supervisors nor any of the County's officers were made parties.  The bill alleged that the complainants each owned tracts of land on the south side of Route 725 immediately adjoining the "Family Subdivision," that the affidavits made by the subdividers were false and had induced the Loudoun County authorities to approve the subdivision, that the subdividers' real purpose was to circumvent the provisions of the ordinance by creating lots for short-term development and resale to persons outside the immediate family, and that Cox was aware of these circumstances

4

at the time it took title.  The complainants contended that the "wrongful approval" of the subdivision had injured their property interests by permitting the construction of three houses where only one would have been otherwise permitted; that the effect of such development would be to triple the traffic on Route 725, their access road; that it would triple the amount of water taken from the underground aquifer upon which their wells depended; that it would triple the effluent from septic fields, endangering their water supply; and that it would diminish the privacy and seclusion that contributed value to their properties.  The bill concluded with prayers for a declaratory judgment declaring the "Family Subdivision" void, for a decree restoring the status quo ante and for general equitable relief.

The subdividers filed a demurrer on the grounds that declaratory judgment was an improper remedy and that the Bill of Complaint failed to state facts constituting a cause of action. Cox and the Bank filed a demurrer on the grounds that the complainants lacked standing to raise any claim against the defendants and that "the Complainants may not as a matter of Virginia law seek to enforce the provisions of the Loudoun County Land Subdivision and Development Ordinance.  Sole authority to enforce the provisions of the aforesaid Ordinance lies in the Board of Supervisors of Loudoun County, and no other party."

After a hearing and a review of briefs by counsel, the court sustained both demurrers without leave to amend and dismissed the Bill of Complaint with prejudice. We awarded the neighbors an appeal.

The neighbors contend that their remedy against the subdividers and the Bank is based upon § 1242.04(1)(a) of the Loudoun County Subdivision and Development Ordinance, which provides:

> Any person aggrieved by the interpretation, administration, or enforcement of these regulations as they apply to a subdivision or site plan application may petition the Circuit Court of Loudoun County as provided by law.

Cox and the Bank reply that the County, as a political subdivision of the Commonwealth, has no power to create a private right of action in the courts in the absence of specific enabling legislation enacted by the General Assembly. In the absence of such a statute, they argue, the words "as provided by law" in the Ordinance have no effect. In sustaining the demurrer, the trial court agreed, stating that "[O]rdinance 1242.04 does not create a separate new cause of action. It just says how you can enforce things if there is law that allows you to do it, and in this case there is no law that will allow a private landowner to file suit to attack . . . an ordinance that approves a family subdivision."

6

The neighbors make no contention that the county ordinance may create a private cause of action without enabling legislation, but assert that such a legislative grant of authority is to be found in Title 15.2, Chapter 22, Article 6 of the Code of Virginia, styled "Land Subdivision and Development." They rely on Code § 15.2-2241:

> A subdivision ordinance shall include reasonable regulations and provisions that apply to or provide:
>
> . . . .
>
> 9. For the administration and enforcement of such ordinance, not inconsistent with provisions contained in this chapter . . . .

and Code § 15.2-2255:

> The administration and enforcement of subdivision regulations insofar as they pertain to public improvements . . . shall be vested in the governing body of the locality in which the improvements are or will be located.
>
> Except as provided above, the governing body shall be responsible for administering and enforcing the provisions of the subdivision regulations through its local planning commission or otherwise.

The neighbors conclude that the final phrase "or otherwise" implies a power in the Loudoun County Board of Supervisors to provide "for the enforcement of the provisions of the subdivision regulations by affording 'aggrieved persons' — such as Shilling and La Isla — the right to challenge subdivision approvals in the local circuit court."

We do not agree. The power of a local governing body, unlike that of the General Assembly, must be exercised pursuant to an express grant. National Realty Corp. v. City of Virginia Beach, 209 Va. 172, 175, 163 S.E.2d 154, 156 (1968). No such grant of power is to be found in the statutory scheme governing land subdivision. Title 15.2, Chapter 22, Article 6, is replete with express grants of powers to local governing bodies and their authorized agents to administer and enforce their own subdivision regulations, e.g., § 15.2-2245(A) (power to act on performance bonds); § 15.2-2254(2) (power to approve plats for recordation); § 15.2-2258 (power of planning commission to act on plats); §§ 15.2-2259, -2260, -2261(B)(1) and -2271(1) (various powers of governing body with respect to plats). Nowhere in these enabling acts has the General Assembly either conferred upon a third party, a stranger to the subdivision approval process, a right to bring a suit to enforce the local ordinance or expressly empowered the local governing body to grant such a right.

We observed, in National Realty Corp., 209 Va. at 174, 163 S.E.2d at 156, and in Board of Supervisors v. Georgetown Land Co., 204 Va. 380, 383, 131 S.E.2d 290, 292 (1963), that the statutory predecessors of the current enabling acts "reaffirmed the authority of localities to regulate the subdivision and development of land." (Emphasis added.) Indeed, the very

provisions relied on by the neighbors evince a clear legislative intent to vest in the governing body and its authorized agents the sole power to enforce its subdivision ordinances. We construe the words "or otherwise" in Code § 15.2-2255 as a provision enabling the local governing body to resort to any of its authorized agents, in addition to its planning commission, for the enforcement of its subdivision ordinance.

The phrase "or otherwise" is not an express grant of power to the governing body to create a third-party right of action, and it does not give rise to such a grant by necessary implication. Injuries to property rights are ordinarily subject to a five-year statute of limitations. Code § 8.01-243(B). Third-party suits challenging subdivisions long after their approval and recordation could have a profound effect on the vested property rights of innocent purchasers and lenders. We will not impute to the General Assembly an intent to create such an effect in the absence of express statutory language.

Because the neighbors had no right of action, the trial court correctly sustained the demurrer filed by Cox and the Bank and we do not reach the other issues raised on appeal.

Affirmed.
