PRESENT:  All the Justices

JACQULYN C. LOGAN, ET AL.

v.   Record No. 070371                    OPINION BY
                                  JUSTICE BARBARA MILANO KEENAN
                                         April 18, 2008
CITY COUNCIL OF THE CITY
OF ROANOKE, ET AL.


         FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                     Charles N. Dorsey, Judge

     The primary issue we decide in this appeal is whether Code

§ 15.2-2255 permits a local governing body to delegate to a

planning commission or other agent the authority under a

subdivision ordinance to grant exceptions involving public

improvements.  We also consider the issue whether certain

provisions in the Roanoke City Subdivision Ordinance[1] (the

Subdivision Ordinance) provided adequate standards, in

compliance with Code § 15.2-2242(1), for rendering

discretionary decisions granting exceptions under that

Ordinance.  Finally, we consider whether neighboring landowners

may seek a declaratory judgment regarding a locality's

application of a subdivision ordinance.

                    I. FACTS AND PROCEDURAL HISTORY

_____

     [1] All references to the Roanoke City Subdivision Ordinance
contained in this opinion relate to the Ordinance as it was
written in 2004, because the parties and the circuit court
relied exclusively on this version of the Ordinance when the
case was decided by the circuit court.  Since 2004, the
Ordinance has been renumbered and portions have been amended.


                               1

In 2004, George Leonard Boone, president of Boone Homes, Inc., a land development company, began working with officials from the City of Roanoke (the City) to obtain approval of a subdivision plat providing for the construction of about 60 single-family homes in southern Roanoke.  Boone planned to build this housing development, known as "Wilton," on about 50 acres of mountainous land.

Boone worked with R. Brian Townsend, the City's Director of Planning, Building, and Economic Development, to obtain approval of the Wilton subdivision plat.  Townsend was the subdivision agent authorized by the City Council and the City Planning Commission, under former Subdivision Ordinance §§ 31-5(a)[2] and 31-65,[3] to make decisions regarding exceptions to the Subdivision Ordinance.

In December 2004, Townsend conditionally approved a portion of the subdivision plat for the Wilton development. The approved portion of the plat incorporated the following exceptions to the Subdivision Ordinance requirements: 1) an exception from the 10% maximum grade requirement for local streets, as set forth in former Subdivision Ordinance § 31-70, to allow for a maximum grade of 16% for one local street; 2) an

---

[2] Under current Subdivision Ordinance § 31.1-600, the City Planning Commission is authorized to elect an agent to administer and enforce the Ordinance.
[3] Subdivision Ordinance § 31.1-210 is the current provision that permits an agent to grant exceptions to the Ordinance.

exception from the minimum requirement for local streets of a 30-foot-wide paved surface, as set forth in former Subdivision Ordinance § 31-90(b),[4] to permit several streets 22 feet in width; 3) an exception from the maximum length for cul-de-sac streets of 600 feet, as set forth in former Subdivision Ordinance § 31-70, to permit a cul-de-sac street of 1800 feet; and 4) permission to construct street blocks up to a maximum length of 1800 feet, a departure from former Subdivision Ordinance § 31-67,[5] which states that blocks longer than 1200 feet, or less than 360 feet, "may be cause for disapproval of the preliminary plat."

Boone requested several of these exceptions in order to construct an access road, named Wilton Park Drive, leading into the Wilton development. Under Boone's plan, Wilton Park Drive would intersect with Peakwood Drive, an existing main road in a residential area of the City known as Prospect Hills. To construct Wilton Park Drive, Boone planned to demolish a house he owned on a one-acre lot that connects the Wilton property with Peakwood Drive and construct the entry to Wilton Park Drive on that lot. The proposed Wilton Park Drive would have a downward grade of 16% and, like all the proposed roads in the

---

[4] Current Subdivision Ordinance § 31.1-400 provides requirements for the width of paved streets.

[5] Current Subdivision Ordinance § 31.1-301 addresses interconnected systems of streets and the "maximum street length between such connections."

Wilton subdivision, would end in a cul-de-sac.

In October 2005, Jacqulyn C. Logan and 15 additional landowners who own homes on Peakwood Drive near the proposed Wilton subdivision filed a bill of complaint for declaratory judgment against the Roanoke City Council, the City Planning Commission, Townsend, and Boone Homes, Inc. (collectively, the defendants). Logan and the additional complainants (collectively, Logan) alleged that Peakwood Drive, a curved road located on a mountainside, would be "unsafe and inappropriate" for the additional vehicle traffic that would result from construction of the Wilton subdivision.

Logan also alleged in the bill of complaint that the Subdivision Ordinance was both facially invalid and invalid as applied to the approval of the Wilton subdivision plat. Logan asserted the following particular claims relevant to this appeal: 1) former Subdivision Ordinance §§ 31-65 and -90(b) were unlawful because they stated less stringent standards for granting exceptions to the Subdivision Ordinance than the standards provided in Code § 15.2-2242(1); 2) in violation of Code § 15.2-2255, the City Council improperly delegated to its subdivision agent the authority to grant exceptions under the Subdivision Ordinance involving public improvements; 3) former Subdivision Ordinance §§ 65 and -90(b) failed to provide adequate standards to guide the subdivision agent's decisions

4

whether to grant exceptions under the Ordinance; 4) the subdivision agent lacked authority under Code §§ 15.2-2242 and -2255 to grant exceptions relating to public improvements; 5) the subdivision agent acted arbitrarily and capriciously when he granted the exceptions; and 6) the approval of plans for proposed Wilton Park Drive violated former Subdivision Ordinance § 31-8[6] because the plans would alter the boundaries of lots in Prospect Hills and would alter Peakwood Drive.

The defendants filed demurrers to the bill of complaint. The circuit court sustained the demurrers regarding Logan's claims one, two, and four, as listed above, and granted Logan leave to amend those claims.

After Logan filed an amended bill of complaint, the defendants again filed demurrers. Among other things, the defendants contended that Logan did not have a private right of action to challenge enforcement of the Subdivision Ordinance as applied to the Wilton subdivision plat. The circuit court held that the amended bill of complaint was not significantly different from Logan's original pleading, and again sustained the demurrers regarding claims one, two, and four.

The case proceeded to a five-day bench trial, in which the circuit court heard evidence relating to each of the granted

---

[6] The current Subdivision Ordinance does not contain a provision that specifically addresses boundary line relocation.

5

exceptions.  Following the trial, in a letter opinion, the circuit court dismissed Logan's remaining claims.  The circuit court held that Logan could seek a declaratory judgment under Code § 8.01-184 to determine the adequacy of standards for granting exceptions under the Subdivision Ordinance, and the propriety of the particular decisions Townsend made concerning the Wilton subdivision plat.  The circuit court concluded that former Subdivision Ordinance §§ 31-65 and -90 contained definite and sufficient standards under Code § 15.2-2242(1) to guide the subdivision agent in exercising his discretion under those provisions.  The circuit court also held that Logan failed to prove by a preponderance of the evidence that the subdivision agent acted in an arbitrary and capricious manner in granting the challenged exceptions.

We awarded Logan this appeal.  We also granted the defendants' assignments of cross-error, in which they assert that Logan did not have a right of action to challenge the subdivision agent's application of the Subdivision Ordinance in approving the Wilton subdivision plat.

## II. ANALYSIS

### A. Delegation of Authority to Subdivision Agent

Logan argues that the City Council was prohibited by Code § 15.2-2255 from adopting a provision in its Subdivision Ordinance that delegated to its subdivision agent the authority

6

to approve exceptions involving public improvements.  The statute provides:

> The administration and enforcement of subdivision regulations insofar as they pertain to public improvements as authorized in §§ 15.2-2241 through 15.2-2245 shall be vested in the governing body of the locality in which the improvements are or will be located.

> Except as provided above, the governing body shall be responsible for administering and enforcing the provisions of the subdivision regulations through its local planning commission or otherwise.

Code § 15.2-2255.

Relying on the Dillon Rule of strict construction, Logan contends that the first paragraph of Code § 15.2-2255 removes the category of public improvements from the general authority of a local governing body to delegate matters concerning the application and enforcement of its subdivision ordinance. Thus, Logan contends that only a local governing body, not its designated agent, may grant exceptions pertaining to public improvements as part of the subdivision plat approval process.

In response, the defendants contend that the first paragraph of Code § 15.2-2255 addresses situations in which real property is subject to the subdivision ordinances of both a county and a municipality.  According to the defendants, in such situations, the administration and enforcement of subdivision ordinance provisions pertaining to public improvements shall be vested in the governing body of the

7

locality in which the improvements are located.  Thus, the defendants assert that because approval of the Wilton subdivision plat did not involve public improvements located in more than one jurisdiction, this statutory provision did not prevent the City from delegating to Townsend the authority to grant exceptions relating to public improvements proposed for the Wilton subdivision.  We agree with the defendants' arguments.

We examine the language of Code § 15.2-2255 in the context of related statutes that also address the application and enforcement of subdivision ordinances.  Our consideration of the various statutes involves a pure question of law, which we determine de novo on appeal.  Miller v. Highland County, 274 Va. 355, 364, 650 S.E.2d 532, 535 (2007); Budd v. Punyanitya, 273 Va. 583, 591, 643 S.E.2d 180, 184 (2007); Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006).  The central focus of our analysis is to ascertain and give effect to the General Assembly's intent in enacting the provisions concerning subdivision ordinances adopted by localities.  See Miller, 274 Va. at 364, 650 S.E.2d at 535; Boynton, 271 Va. at 227, 623 S.E.2d at 925; Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003).

We determine the General Assembly's intent from the words employed in the statutes.  Miller, 274 Va. at 364, 650 S.E.2d

8

at 535; Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005); Horner v. Dep't of Mental Health, 268 Va. 187, 192, 597 S.E.2d 202, 204 (2004).  We may not add words to a statute or ignore any of the actual statutory language.  Purce v. Patterson, 275 Va. 190, 194, 654 S.E.2d 885, 886 (2008); BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007).  Thus, we presume that every part of a statute has some effect, and we will not consider any portion meaningless unless absolutely necessary.  Jackson v. Commonwealth, 274 Va. 630, 634, 652 S.E.2d 111, 113 (2007); Level 3 Commcn's of Va., Inc. v. State Corp. Comm'n, 268 Va. 471, 477-78, 604 S.E.2d 71, 74 (2004); Department of Medical Assistance Servs. v. Beverly Healthcare of Fredericksburg, 268 Va. 278, 285, 601 S.E.2d 604, 608 (2004); Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340-41, 497 S.E.2d 335, 338 (1998).  Additionally, because the several statutes we consider impact the same subject, we harmonize their provisions whenever possible.  Peerless Ins. Co. v. County of Fairfax, 274 Va. 236, 244, 645 S.E.2d 478, 483 (2007); Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 439-40, 621 S.E.2d 78, 87 (2005); Capelle v. Orange County, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005).

We disagree with Logan's argument that the first paragraph of Code § 15.2-2255 is intended to restrict a governing body's power to delegate the administration and enforcement of

9

subdivision regulations pertaining to public improvements. Such a construction would render meaningless the phrase "in which the improvements are or will be located."

Instead, we conclude that the first paragraph of the statute is intended to address situations in which existing or proposed public improvements may be subject to the subdivision ordinances of more than one locality. Such circumstances may arise under the provisions of Code §§ 15.2-2248 and -2249.

Under Code § 15.2-2248, in five specified counties, the subdivision regulations adopted by a municipality located within those counties shall apply in certain circumstances beyond the municipality's corporate limits into unincorporated regions of the county, if the municipal ordinance so provides. However, under Code § 15.2-2249, the subdivision regulations adopted by the local governing bodies of these five counties shall apply in all unincorporated areas of those counties, including those areas over which a municipality may extend the application of its subdivision ordinance, provided that any such municipality has been given the opportunity to approve or disapprove the county's proposed regulations.

The General Assembly specifically contemplated that disagreements could arise under these provisions regarding whether the regulations of a county or a municipality should be applicable to a given area. To address this problem, Code

§ 15.2-2250 permits a municipality or a county, or both these parties, to petition the circuit court for the county in which the major part of the disputed territory lies, and the circuit court "shall hear the matter and enter an appropriate order." Id.

Viewed in the context of these statutes, the legislative intent of Code § 15.2-2255 is plain.  We conclude that the General Assembly intended to make certain that control over the development of public improvements not be subject to uncertainty on the part of local officials or to an unresolved dispute between a county and a municipality.  By enacting Code § 15.2-2255, the General Assembly specified that with regard to public improvements authorized by the subdivision ordinance enabling statutes, the administration and enforcement of subdivision regulations will be controlled by the governing body in which the improvements are or will be located.  Accordingly, this provision removes any uncertainty regarding which jurisdiction shall exercise control over present and proposed public improvements physically located in a given jurisdiction.

In view of this statutory purpose, we hold that the first paragraph of Code § 15.2-2255 does not reflect a legislative intent to prevent a local governing body from delegating to an agent the responsibility to administer and enforce subdivision

11

regulations pertaining to public improvements within that locality. In fact, such delegation is expressly authorized by the second paragraph of Code § 15.2-2255, subject to the restrictions imposed by the first paragraph concerning public improvements that may be within the joint control of more than one locality.

Our conclusion is not altered by Logan's argument that the Dillon Rule of strict construction prohibits this result. Under the Dillon Rule, municipal corporations and counties possess and may exercise only those powers expressly granted by the General Assembly, powers necessarily or fairly implied from such express powers, and those powers that are essential and indispensable. Norton v. City of Danville, 268 Va. 402, 408 n.3, 602 S.E.2d 126, 129 n.3 (2004); Arlington Co. v. White, 259 Va. 708, 712, 528 S.E.2d 706, 708 (2000); Board of Supervisors v. Countryside Inv. Co., 258 Va. 497, 503, 522 S.E.2d 610, 613 (1999); County of Fairfax v. Southern Iron Works, Inc., 242 Va. 435, 448, 410 S.E.2d 674, 682 (1991). Here, the City Council's delegation of authority to its subdivision agent was expressly authorized by the second paragraph of Code § 15.2-2255. Therefore, the City did not violate the Dillon Rule by delegating authority to its subdivision agent to administer and enforce the provisions of the Subdivision Ordinance pertaining to public improvements.

12

## B. Adequacy of Subdivision Ordinance Standards

Logan argues that the former Subdivision Ordinance did not comply with the provisions of Code § 15.2-2242(1), which permit local governing bodies to adopt procedures for granting exceptions under their subdivision ordinances.  Logan contends that the former Subdivision Ordinance failed to articulate standards required by Code § 15.2-2242(1) to guide decisions regarding the approval of exceptions.  According to Logan, the evaluative factors listed in former Subdivision Ordinance §§ 31-65 and -90(b) provided little or no guidance for the granting of exceptions.  Logan also contends that the language in former Subdivision Ordinance § 31-67 regarding block lengths lacked any substantive standard for permitting an exception under that section.

Initially, we do not consider Logan's argument that former Subdivision Ordinance § 31-67 was facially invalid because it lacked any standard to guide administrative review of its provisions.  Logan did not make such an allegation in her amended bill of complaint and, therefore, the issue was not properly before the circuit court and is not before us in this appeal.  See Board of Supervisors v. Robertson, 266 Va. 525, 538, 587 S.E.2d 570, 578-79 (2003); Jenkins v. Bay House Assocs., 266 Va. 39, 43, 581 S.E.2d 510, 512 (2003).  Accordingly, we confine our review to Logan's remaining

13

allegations that former Subdivision Ordinance §§ 31-65 and –90(b) were facially invalid.

In considering Logan's argument, we observe that the General Assembly has required that all local governing bodies adopt subdivision ordinances.  Code § 15.2-2240.  Those subdivision ordinances must include the provisions specified in Code § 15.2-2241, and may contain certain optional provisions set forth in Code § 15.2-2242.

The language of Code § 15.2-2242(1), which details one such optional provision, states that a subdivision ordinance may include provisions for "variations in or exceptions to the general regulations of the subdivision ordinance in cases of unusual situations or when strict adherence to the general regulations would result in substantial injustice or hardship." Under this authority, the City Council included several provisions in the former Subdivision Ordinance authorizing the subdivision agent to grant exceptions to the Ordinance's requirements.

When a legislative body delegates its authority to an administrative agent, that body must prescribe sufficient standards to guide the administrator in exercising the delegated authority.  Bell v. Dorey Electric Co., 248 Va. 378, 382, 448 S.E.2d 622, 624 (1994); Ours Properties, Inc. v. Ley, 198 Va. 848, 851-53, 96 S.E.2d 754, 756-58 (1957).  Therefore,

14

we consider whether former Subdivision Ordinance §§ 31-65 and –90(b) prescribe sufficient standards to guide the subdivision agent's decision whether to grant exceptions under those sections.

Former Subdivision Ordinance § 31-65, entitled "General requirements; exceptions from article," provided:

> The arrangement of lots, character of the subdivision, and extent, width, grade and location of all streets shall conform to the officially adopted master plan or parts, divisions or sections thereof and shall be considered in their relation to existing and planned streets, topographical conditions and public convenience and safety, and in their appropriate relation to the proposed uses of adjacent land; provided, however, that the agent may determine that the size or shape of the land, topography, proposed land use or other special conditions make compliance with all provisions of this article impractical and may make exceptions to provisions contained herein, provided such exceptions are not in conflict with provisions of other city ordinances.

Because former Subdivision Ordinance § 31-65 did not define the term "impractical," we employ the general definition of that word in considering the adequacy of the stated standards. See Adams Outdoor Adver., L.P. v. Board of Zoning Appeals, 274 Va. 189, 196, 645 S.E.2d 271, 275 (2007); Hoffman Family, L.L.C. v. City of Alexandria, 272 Va. 274, 284, 634 S.E.2d 722, 727 (2006). The word "impractical" is defined as "incapable of being put into use or effect or of being accomplished or done successfully or without extreme trouble,

15

hardship, or expense."  See <u>Webster's Third New International Dictionary</u> 1136 (1993).

We also observe that former Subdivision Ordinance § 31-90(b) required that local streets have a minimum paved width of 30 feet.  However, this section also provided for an exception to that requirement, stating that "[i]n cases where the cross slope will not permit a greater width," the agent may modify the minimum paved width requirement "in a manner that will result in the best possible utilization of the land to be subdivided, giving consideration to the topography of the land and general character and density of the proposed subdivision."

Upon our review, we hold that former Subdivision Ordinance §§ 31-65 and -90(b) prescribed adequate standards for the subdivision agent's exercise of delegated authority consistent with the directive of Code § 15.2-2242(1).  The subdivision agent was required to consider several factors under former Subdivision Ordinance § 31-65 before granting an exception to the stated ordinance requirements.  That section also prohibited the agent from granting an exception to an ordinance requirement if the exception would be in conflict with any provision of any city ordinance.

Absent such a conflict, former Subdivision Ordinance § 31-65 permitted the subdivision agent to grant an exception based on such factors as the size or shape of the parcel, its

16

topography, the proposed land use, or other special conditions upon determining that compliance with the general subdivision ordinance requirements would be "impractical." Under former Subdivision Ordinance § 31-90(b), the agent could not permit an exception from the minimum width requirement of 30 feet for paved local streets unless a situation presented by a "cross slope" indicated that such an exception was needed. This section further required that the agent consider the topography and character of the subdivision to achieve the best utilization of the land. Thus, we hold that the circuit court did not err in concluding that these provisions contained adequate standards to guide the subdivision agent's decisions whether to grant the allowable exceptions.

### C. Agent's Application of Subdivision Ordinance

The defendants argue as a matter of cross-error that Logan did not have a right to file a declaratory judgment action challenging Townsend's application of the Subdivision Ordinance in granting exceptions for the Wilton subdivision. According to the defendants, our holdings in Shilling v. Jimenez, 268 Va. 202, 597 S.E.2d 206 (2004), and Miller v. Highland County, 274 Va. 355, 650 S.E.2d 532 (2007), require that we dismiss this portion of Logan's appeal.

In response, Logan asserts that the Declaratory Judgment Act, Code §§ 8.01-184 through -191, permits her present

17

challenge to Townsend's application of the Subdivision

Ordinance.  Logan contends that her case may be distinguished

from the proceedings in Shilling, which did not include the

locality as a party defendant but involved a neighboring

landowner's suit against an adjoining property owner.  Logan

further maintains that our decision in Shilling is not

controlling because in that case, we did not address a

subdivision agent's interpretation of an ordinance or an

agent's allegedly arbitrary and capricious actions granting

exceptions to that ordinance.  We disagree with Logan's

arguments.

In Shilling, we considered the issue whether the

declaratory judgment statutes may be used to maintain a third-

party challenge to a government action when such challenge is

not authorized by statute.  The complainants in Shilling filed

a declaratory judgment action requesting that a circuit court

declare void the creation of a certain "family subdivision"

approved under an ordinance allowing conveyances to members of

a landowner's immediate family.  268 Va. at 205-06, 597 S.E.2d

at 208.  The neighboring landowners alleged that local

officials wrongfully approved the subdivision based on factual

misrepresentations made by the applicant.  Id.

The defendants filed demurrers alleging that the local

governing body was the sole entity authorized to enforce the

18

ordinance, and that the complainants could not seek to enforce the ordinance provisions by employing the remedy of declaratory judgment. The circuit court sustained the demurrers and dismissed the bill of complaint with prejudice. Id. at 206, 597 S.E.2d at 208. We affirmed the circuit court's judgment, holding that the complainants, who were strangers to the subdivision approval process, did not have a third-party right of action to enforce the locality's application of its subdivision ordinance in a declaratory judgment suit, because no statute granted third parties this right. Id. at 208, 597 S.E.2d at 209-10.

Three years after our decision in Shilling, we were asked in Miller to consider the complainants' attempted use of the declaratory judgment statutes to challenge a planning commission's determination that that a conditional use permit was in "substantial accord" with the locality's comprehensive plan. 274 Va. at 368-69, 650 S.E.2d at 538; see also Code § 15.2-2232. We held that the complainants failed to assert a valid request for declaratory relief because no statute specifically authorized such a right of action. Miller, 274 Va. at 371-72, 650 S.E.2d at 540.

We explained that the purpose of the declaratory judgment statutes is to provide a mechanism for obtaining preventive relief to resolve controversies involving legal rights, without

19

requiring one party to invade the asserted rights of another in order to allow an ordinary civil action for damages. Miller, 274 Va. at 370, 650 S.E.2d at 539; Hoffman Family, L.L.C. v. Mill Two Assocs. P'ship, 259 Va. 685, 693, 529 S.E.2d 318, 323 (2000); Cupp v. Board of Supervisors, 227 Va. 580, 592, 318 S.E.2d 407, 413 (1984). We emphasized that our declaratory judgment statutes "do not create or alter any substantive rights, or bring any other additional rights into being." Miller, 274 Va. at 370, 650 S.E.2d at 539; accord Liberty Mutual Ins. Co. v. Bishop, 211 Va. 414, 419, 177 S.E.2d 519, 522 (1970).

We conclude that the holdings in Shilling and Miller require dismissal of the part of Logan's appeal challenging Townsend's application of the Subdivision Ordinance to the proposed Wilton subdivision. Like the complainants in those two cases, Logan has attempted to use the declaratory judgment statutes to create a right of appeal to the circuit courts that does not otherwise exist. Because the declaratory judgment statutes do not create such rights, and in the absence of statutory authority granting her a right of appeal to actions taken under the Subdivision Ordinance, Logan remained a stranger to the subdivision approval process and was not authorized to challenge Townsend's actions under that

20

Ordinance.[7]  Therefore, we hold that the circuit court erred in concluding that Logan had a third-party right of action to challenge the City's approval of the Wilton subdivision plat, and that this part of Logan's appeal must be dismissed.

### III. CONCLUSION

Based on our holdings in this appeal, we will affirm the part of the circuit court's judgment concluding that the City lawfully delegated authority to its subdivision agent to administer and enforce the provisions of the Subdivision Ordinance pertaining to public improvements.  We also will affirm the part of the circuit court's judgment holding that former Subdivision Ordinance §§ 31-65 and –90(b) provided adequate standards to guide the subdivision agent's exercise of discretion in granting exceptions allowed under those Ordinance provisions.  We will enter final judgment in favor of the defendants on these parts of the circuit court's judgment.

---

[7] We observe that, in one of her assignments of error, Logan challenged the circuit court's "ruling that [former] City Code § 31-8 permitted Townsend to approve a change to the boundaries of a lot, even though the purpose and effect of the change was to add a new intersection to, and thus physically alter, Peakwood Drive."  Logan did not assign error, however, on the separate basis that approval of the changes to Peakwood Drive violated Code § 15.2-2275, which, among other things, prohibits a locality from allowing under its subdivision ordinance the alteration of a boundary line of a lot when that action "involve[s] the relocation or alteration of streets, alleys, easements for public passage, or other public areas."  Therefore, we do not consider the impact of Code § 15.2-2275 on the actions relating to Peakwood Drive taken pursuant to the former Subdivision Ordinance.

We will reverse the part of the circuit court's judgment holding that Logan was entitled to seek a declaratory judgment regarding the subdivision agent's application of the former Subdivision Ordinance to the proposed Wilton subdivision, and we will enter final judgment in favor of the defendants on this part of the circuit court's judgment.  Accordingly, we also will vacate the part of the circuit court's judgment regarding the subdivision agent's application of the former Subdivision Ordinance, and we will dismiss the portion of Logan's appeal addressing that part of the circuit court's judgment.

<u>Affirmed in part, reversed in part, vacated in part, dismissed in part, and final judgment.</u>